## COMMONWEALTH *versus* BENJAMIN KIMBALL.

On the trial of an indictment for selling spirituous liquor without a license, in viola-
tion of Revised Stat. *c.* 47, § 3, the purchaser may be required to testify to the
sale.

If a witness called to support a criminal prosecution objects to giving his testimony,
because it will criminate himself, but is nevertheless erroneously compelled to tes-
tify, and the defendant is convicted, *it seems* that the error does not affect the rights
of the witness alone, but that the defendant may object that the conviction was found-
ed upon illegal evidence.

The words of the statute being general, that no person shall presume to be a retailer
or seller of spirits in a less quantity than twenty-eight gallons, unless he is first li-
censed as a retailer, it is not competent for a party indicted for selling contrary to
the statute, to prove that the spirit was bought of him to be used as medicine ; at
least not without proof that he was an apothecary or druggist, or professed to deal
in medicines, and that the purpose of buying was made known to him at the time
of the sale ; but *it seems* that such proof would make no difference.

On the trial of such an indictment, it is competent to the government to give in evi-
dence the declaration of the defendant, that he considered the law unconstitutional
and intended to sell in disregard of it, although the alleged sale was after the de-
fendant had been convicted on an indictment for a similar offence, on the trial of
which the same declaration had been given in evidence.

On the trial of such an indictment a witness for the defendant having testified, that
before the alleged sale he had purchased of the defendant all the spirits in the de-
fendant's shop, and paid therefor, and taken a lease of the shop, and that the al-
leged sale was made by an agent on his account, and not on account of the
defendant, it was *held,* that the defendant had a right to ask the witness whether
the transaction with him was an actual *bonâ fide* or only a colorable and pretended
sale.

On the trial of an indictment the jury were instructed, that when the government have
made out a *primâ facie* case, it is incumbent on the defendant to restore himself to
that presumption of innocence in which he was at the commencement of the trial
It was *held,* that this was erroneous, and that the jury should have been instructed,
that the burden of proof was upon the Commonwealth to prove the guilt of the de
fendant ; that he was to be presumed innocent, unless the whole evidence in the
case satisfied them that he was guilty.

INDICTMENT for retailing spirituous liquors in quantities less
than twenty-eight gallons, contrary to Revised Stat. *c.* 47, § 3.
Trial in the Common Pleas, before *Williams* J.

It was admitted, that no person was licensed to retail spirit
in the county of Essex.

The persons named in the indictment as purchasers of the
spirit, were called to testify to their alleged purchases. It was
objected in their behalf, by the counsel for the defendant, that
they could not be compelled to answer the question, whether
they had bought spirit of any one, because their answer might

tend to disgrace and bring them into contempt ; because they might accuse themselves of a misdemeanor, they being principals in the act of sale, if any ; and because they might criminate and furnish evidence against themselves on a charge of the crime of drunkenness. But the court overruled these objections, and directed the witnesses to testify. The witnesses then answered, that they had bought spirit in a shop belonging to the defendant, and partially or wholly occupied by him, of one Flanders, who had formerly been his clerk, and was still occasionally employed by him. The spirit sold was, in some instances, French brandy, Holland gin, West India rum, and New England rum.

The defendant offered to prove, that all the spirit testified to have been bought of Flanders was bought to be used *bonâ fide* for the purpose of medicine ; and he contended, that *bonâ fide* sales of spirituous liquor for medicine were not within the purview of the statute. But the court decided that such sales were prohibited, and refused to admit the testimony offered to this point.

Conversations were then testified to, in which the defendant said " he had a constitutional right to sell spirit," and used other expressions which might be understood to indicate an intention to sell spirit illegally. Subsequently to these conversations, the defendant was convicted of selling spirit illegally, and he objected to the introduction of this evidence under the pending indictment, because it only tended to render probable an offence for which he had already been tried and convicted, and its force was merged in that conviction. But the court overruled the objection and admitted the evidence.

The defendant then called one Bradley, who testified, that before the several sales made by Flanders, he, Bradley, had bought of the defendant all the spirit in the shop, at a fair price, and paid therefor in cash and a negotiable note ; that he had taken a lease of the shop, at a fair rent, to store and sell the spirit in, and had hired Flanders, at fair wages, to sell the spirit for him, and pay over to him the proceeds ; which had been done ; and that the defendant had no interest in the spirit or its proceeds. The bill of sale, lease, note, and a receipt from Flanders, for his wages, were exhibited and sworn to. The

defendant then proposed to ask the witness, if the whole of the transaction sworn to by him was in every respect *bonâ fide ;* but the court overruled the question, and held that the jury must be left to infer from the circumstances and facts appearing in the case, whether the transaction was or was not *bonâ fide*, and what was its real character.

The defendant then moved the court to instruct the jury, that the burden of proof is on the government to make out their whole case, and that when a *primâ facie* case is made out, it then becomes incumbent on the defendant only to create a reasonable doubt thereof. But the court instructed them, that when the government have made out a *primâ facie* case, it is then incumbent on the defendant to restore himself to that presumption of innocence in which he was at the commencement of the trial.

The jury having found a verdict against the defendant, he filed exceptions to the above opinions and directions of the court.

*Rantoul, Cushing* and *Ward*, for the defendant, cited to the point, that the purchasers of the spirits ought not to have been required to testify to the sales, 1 Chit. Crim. Law, (Perkins's ed.) 620, and note ; *Southard* v. *Rexford*, 6 Cowen, 255 ; *Cates* v. *Hardacre*, 3 Taunt. 424 ; *The State* v. *K.* 4 N. Hamp. R. 562 ; *Paxton* v. *Douglas*, 19 Ves. 227 ; *Dixon* v. *Vale*, 1 Carr. & Payne, 279 ; that evidence to prove that the spirits were sold for the purpose of medicine was admissible, Dwarris on Statutes, 692, 694, 757 ; and as to the instruction respecting the burden of proof, 1 M'Nally on Ev. 2 ; 1 Stark. Ev. 449.

*Austin*, Attorney-General, for the Commonwealth.

SHAW C. J. afterward drew up the opinion of the Court. This case comes before us upon numerous exceptions, taken to the opinions and directions of the Court of Common Pleas

The first exception taken was, that certain witnesses were called and questioned whether they had purchased spirituous liquors of the defendant, and though the question was objected to, they were required to answer it. It was objected to, on the ground that the answer would tend to subject the witnesses to a criminal prosecution, and to bring them into disgrace.

We think it must be understood from the bill of exceptions, that the objection, though said to be made in behalf of the witnesses, was in effect made by themselves, and therefore if they ought not to have been required to answer, the objection was improperly overruled. It was also contended on the part of the government, that whether the objection was rightly or wrongly overruled, it affected the rights of the witnesses only, and the defendant could take no advantage of it. But we think it would be difficult to maintain this position. If the evidence was incompetent and the objection seasonably taken by the proper party and by law ought to have been sustained, it could not be held that the verdict was supported by legal evidence. But we are of opinion, that the objection was properly overruled, and that the answer to the question had no tendency to charge the witness with a crime, or to constitute a link in a chain of evidence, tending to that result. The distinctions between questions, the answer to which would tend to criminate the witness, and those which a witness may be required to answer, are extremely nice and refined, and the cases depend much upon their own circumstances. What crime would the answer of the witness tend to fix on him ? Not drunkenness, for *non constat*, because he buys, he will drink to excess. The fact of buying is not made criminal by the statute. Nor is it a question, the answer to which would disparage his character. The cases commonly put to illustrate that rule, are the questions whether the witness has been set in the pillory or sent to the State prison, or convicted of a felony. Suppose a murder, arson or burglary committed in a house of ill-fame ; could no witness be asked respecting it, because it would lead to the question, whether he was there for an improper purpose ? The question must be of a fact, which directly implicates his own character, not indirectly and by inference. [See *Commonwealth* v. *Willard*, 22 Pick. 476.]

The next exception is, that the defendant offered to prove by the government witnesses, that all the spirit bought by them of Flanders, was bought to be used *bonâ fide* for the purpose of medicine, and he contended that such sales were not within the purview of the statute ; but the court decided that such sales were prohibited by the statute, and rejected the evidence.

It is unquestionably a well settled rule of construction, applicable as well to penal statutes as to others, that when the words are not precise and clear, such construction will be adopted, as shall appear most reasonable, and best suited to accomplish the objects of the statute ; and where any particular construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the legislature, to avoid such conclusion. But the Court are of opinion, that this rule does not apply to the present case, and that the decision of the Court of Common Pleas was right.

It does not appear what the facts actually were, and the tender of evidence is to be construed strictly. It does not appear by this offer, that the defendant was an apothecary or druggist, or professed to sell medicines of any sort. It does appear, that the articles sold were brandy, gin, West India or New England rum, without any mixture or medical preparation. It does not appear, that the defendant or his agent, was applied to for the articles, as medicine, or that the purpose of using them as medicine, was made known to him. But we are not prepared to say, that if these circumstances were otherwise, it would have made any difference. In a broad sense, every article taken into the stomach with a view to remove or prevent pain, or any unpleasant feeling existing or apprehended, may be called medicine, and such construction would extend to the whole diet and regimen. If it were sufficient, to avoid the prohibition of the statute, for the purchaser to say that the spirit was intended for medicine, it would, in effect, repeal the statute. But the decisive answer is, that the legislature has made no such exception. It does not allude to the object or purpose, for which it is bought. Nor is it reasonable to imply any such exception, because having provided that it should be lawful to sell spirits, in a certain mode, there was no occasion for making an exception, and such exception would lead to evasion and abuse. It might be bought for one purpose and used for any and every other, and the danger to be apprehended from the abuse of it, would require restriction and regulation, as well in one case as the other. If the law is more restrictive in its present form than the legislature intended, it must be regulated by legislative action.

The next exception taken was to the admission of certain expressions of the defendant, indicating his belief that the law was unconstitutional, and that it was his intention to sell spirits, without regard to the statute ; which he might do, if it was not constitutional. The objection was, that he had been before prosecuted and these expressions had been given in evidence, and therefore they were not now competent. We consider the evidence as of very little importance, but such as it was, it was competent. If he believed that the statute was unconstitutional, nothing had occurred to correct or change that belief ; he professes to believe so now, and takes that, as one of his principal grounds of defence in this action. We think the evidence was rightly admitted.

The next exception is thus stated ; after Bradley, a witness called by the defendant, had stated, that before the sale in question, he had purchased the whole of the liquor in question of the defendant, Kimball, and paid him therefor, in cash and promissory notes, had taken a lease of the store, had engaged Flanders to sell the liquor for him, and that in fact Flanders, in this respect, was his agent and not Kimball's, he was asked whether this sale was made *bonâ fide* ; but the court overruled the question, and held that it must be left to the jury to infer from the circumstances and facts, appearing in the case, whether the transaction was *bonâ fide*, or what was its real character.

It is difficult, from this very brief statement, to ascertain precisely what is meant by the use of the Latin phrase *bonâ fide*, in this exception ; we are not to presume, that this was the precise form, in which the question was put to the witness. Taking the whole together, including the reason assigned by the court, for refusing the question, we understand that it was intended to inquire of the witness, whether the transaction was a real and actual, or only a colorable and pretended sale ; whether it was the intention of the one actually to buy and become the absolute owner of the property for the consideration named, and of the other, absolutely to part with the property and retain the consideration, with all the consequences ; or whether it was the intention of the parties, without a real transfer, to give the transaction the appearance of a sale, to be used in case of a prosecution. If the latter was the case, then

there was no real change of property in the article sold, no change of possession of the place of sale, and Flanders continued the agent of the defendant, and the sale was on his account. But if there was a real intent to transfer the property, to lease the store, and to transfer Flanders from the service of the defendant to that of Bradley, it would have a material bearing on the question. The pertinency of this evidence must be judged of, by its relevancy to the evidence previously adduced. It was necessary, in order to support the indictment, to prove that the defendant sold the spirit ; and this required proof, either that he did it with his own hand, or that it was done by his agent, under his order and direction, on his premises, and for his account. Perhaps all these circumstances might not be necessary, the offence being committed, if the spirit were sold by him, or by his order and for his account, and any or all of the above circumstances would be evidence upon such an issue. The precise proof offered on the part of the prosecution, as apparent by the report, was, that the spirit had been bought at a store belonging to the defendant, and partially or wholly occupied by him, that it was sold by one Flanders, who had formerly been the clerk of the defendant, and was still occasionally employed by him. The proof relied on by the prosecution, was not of the defendant's own act, but of the act of Flanders, being his clerk, on his premises and for his account. If the inference to be drawn from these circumstances, could be rebutted, it would be a good defence, and would account for all the facts proved, consistently with the defendant's innocence. So it was considered by the court, and the evidence was admitted tending to show a sale of the property and a lease of the store to Bradley, and the employment of Flanders by Bradley. Still the question was, whether under these forms of transfer, the transaction was not merely pretended and colorable, and not real. This depended on the intent of the parties. This was a fact to be proved by any competent evidence. In *Bridge* v. *Eggleston*, 14 Mass. R. 245, it was held, that though there must be a fraudulent intent in both parties, yet the intent of each was a separate fact, and the intent of one may be proved by one kind of evidence, and that of the other, by another. The principle was confirmed in a recent

case, *Foster* v. *Hall,* 12 Pick. 100, in which it is said, that
the evidence may be of different kinds and drawn from different
sources. Such intent is a fact to be proved, like other facts,
either by direct or circumstantial evidence. In general, in-
deed, it must be inferred from circumstances, because those
who were parties to the transaction are usually parties to the
suit, or otherwise interested, and so incompetent witnesses.
But if either or both of the parties to the transaction are so sit-
uated, that they can be competent witnesses in the suit in
which that transaction is drawn in question, they may be exam-
ined as to the intent and purpose, with which it was done ; the
credit of such witness must of course be left to the jury. The
question of intent must be left to the jury ; but it must be upon
all the evidence in the case, bearing upon the issue. The
Court are of opinion, that the defendant ought to have been
permitted to put the question to Bradley, one of the parties to
the alleged sale and transfer, whether the transaction was on his
part *bonâ fide* and intended and understood as a real and actual
sale, or otherwise, and that the rejection of this question was
incorrect in point of law.

In regard to the next exception, the counsel for the defend-
ant requested the court to instruct the jury, that the burden of
proof was on the government, to make out their whole case,
&c., but the court instructed the jury that when the government
have made out a *primâ facie* case, it is then incumbent on the
defendant to restore himself to that presumption of innocence,
in which he was at the commencement of the trial. We are
apprehensive that the distinction between a *primâ facie* case,
which is sufficient to call upon the defendant to go into his
defence and encounter such *primâ facie* case, and the changing
the burden of proof, was not sufficiently considered and ob-
served in this case. Making out a *primâ facie* case does not
necessarily or usually change the burden of proof. A *primâ
facie* case is that amount of evidence which would be sufficient
to counterbalance the general presumption of innocence, and
warrant a conviction, if not encountered and controlled by evi-
dence tending to contradict it, and render it improbable, or to
prove other facts inconsistent with it. But the establishment
of a *primâ facie* case does not take away from a defendant the

presumption of innocence, though it may, in the opinion of a jury, be such as to rebut and control it ; but that presumption remains, in aid of any other proofs offered by the defendant to rebut the prosecutor's *primâ facie* case. The Court are of opinion that the jury should have been instructed, that the burden of proof was upon the Commonwealth, to prove the guilt of the defendant ; that he was to be presumed innocent, unless the whole evidence in the case satisfied them that he was guilty. It is highly probable, that in the actual state of the evidence, it was of little importance whether the jury were instructed in the manner requested, respecting the burden of proof, or not ; but the Court are of opinion that the instruction given to the jury, that it was incumbent on the defendant to restore himself to that presumption of innocence, in which he was at the commencement of the trial, was incorrect in point of law, and might have had an influence on the minds of the jury, unfavorable to the defendant. This exception therefore is sustained.

*Verdict set aside and a new trial granted.*