J. F. NANCE v. SOUTHERN RAILWAY.

(Filed 9 December, 1908).

1. **Weights and Measures — Penalty Statutes — Interpretation of Statute.**

   Revisal, sec. 3073, requires every person using weights and measures to permit the standard-keeper to test them once in every two years, and imposes a penalty upon every person "using, buying or selling" who shall fail to. comply with the requirements of the statute. *Held,* that the words "buying or selling" qualify and limit the word "using," imposing the penalty only on those "buying or selling by weights and measures." The history of the legislation in regard to weights and measures reviewed.

2. **Interpretation of Statutes—Private Rights—Doubtful Meaning.**

   In interpreting a statute where the language is of doubtful meaning, the Court will reject an interpretation which would make the statute harsh, oppressive, inequitable and unduly restrictive of primary private rights.

3. **Interpretation of Statutes — Private Rights — Public Interest — Strict Construction.**

   Statutes which restrict the private rights of persons or the use of property in which the public have no concern should be strictly construed.

This was an action to recover a penalty alleged to have accrued against defendant for refusing to permit plaintiff, standard-keeper of Surry County, to examine and adjust defendant's scales used by it at Pilot Mountain, N. C. There was no evidence that the scales were used in "buying or selling." Plaintiff showed that defendant used them in "weighing freight for shipment." His Honor being of the opinion that plaintiff could not recover rendered judgment of nonsuit. Plaintiff appealed.

*W. L. Reese* for plaintiff.
*Manly & Hendren* and *W. F. Carter* for defendant.

CONNOR, J. The right of the plaintiff to maintain this action depends upon the construction of ch. 77, sec. 3073, Revisal. The defendant insists that, correctly construed, the penalty is incurred only by a person "buying and selling" by weights and measures, and that, as it does neither, it is not within the language or spirit of the statute. Sec. 3063, ch. 77, provides, that no trader or other person shall buy or sell, or otherwise *use in trading* any other, etc. Sec. 3067: "If any person, after demand by the standard-keeper for permission to examine and adjust the same, shall buy, sell *or barter,* by any weight or measure which shall not be tried by the standard-keeper, etc., he shall forfeit and pay $40, etc." Sec. 3073 provides: "Every person *using* weights and measures and steelyards  .  .  .  . · shall allow and permit the standard-keeper of the county to try, examine and adjust by the standard, *at least once every two years,* all the said weights and measures  .  .  .  . used in weighing; and every trader or dealer by profession and every miller, at least once in every two years thereafter, shall permit their weights, measures, etc., used in weighing, to be examined and adjusted by the standard-keeper of the county in which such weights, etc., are used  .  .  .  . and every person using, buying or selling by weights and measures who shall neglect to com-

ply with the requisites of this section shall forfeit $50, to be recovered at the instance of the standard-keeper, one-half to his use and the other half to the use of the county wherein the offence is committed."

Before proceeding to discuss the principal question presented upon the appeal, we desire to call attention to the italicized sentence found in sec. 3073, and the history of the legislation upon the subject. The first statute relating to weights and measure in this State was enacted in 1741, ch. 32. See Laws of North Carolina, 1715-1796, p. 146. It will be well to note the provisions of this statute and the amendments made to it, for the purpose of aiding in the construction of Revisal, sec. 3073. The act of 1741, sec. 1, provides: "That no inhabitant or trader shall *buy or sell* or otherwise make use of *in trading,*" any other than standard weights and measures. Sec. 3 makes it the duty of the Justices to provide standard weights and measures and appoint a standard-keeper. Sec. 4: "That any person whatsoever using weights or measures shall bring all their measures and weights to the keeper of the standard, where such person shall reside or trade, to be there tried by the standard, sealed and stamped; and if any person or persons shall *buy, sell or barter* by any weights or measures which shall not be stamped," a penalty of ten pounds is imposed. Sec. 4: "And whereas steelyards, by use are subject to alteration," it is enacted "that all persons who shall use, buy or sell by steelyards shall once in every year try the same with the standard and take a certificate from the keeper, upon pain of twenty shillings, proclamation money." By ch. 965, Laws 1818, the act was again amended, "providing that every trader, buying or selling by weights and measures, shall before the first day of May next, *and at least once every two years thereafter,* cause their weights and measures to be examined, etc. And every *trader buying or selling* by weights and measures, neglecting to comply with the requisites of this act, shall forfeit the sum

of fifty dollars, etc." Some doubt having arisen as to the proper construction of the statute, as amended, the Legislature of 1823, Laws, ch. 48, enacted: "That no person except traders and dealers by profession, and millers, shall be required to restamp their weights and measures, any law to the contrary notwithstanding." This statute removed any possible doubt as to the state of the law, and no further amendment was made to it when, in 1834, the commission composed of Judges Iredell, Nash and Battle revised the statute law of the State. In ch. 120, Revised Statutes, they incorporated into sec. 4 the original statute as amended, in these words: "Every person whatsoever using weights and measures shall bring them to the keeper of the standard where such person shall reside, to be there tried by the standard; and every trader or dealer by profession and every miller, shall, at least once in every two years thereafter, cause their weights and measures to be tried and adjusted." There can be no doubt that the careful and learned commissioners so construed the original statute and the amendments made previous to that time. No change was made by the several revisals of our statute law, as will be seen by reference to Revised Code (1854), ch. 117, sec. 5; Battle's Revisal (1875), ch. 116, sec. 5; Code (1883), ch. 65, sec. 3841; until 1893 (Laws 1893, ch. 100), when an act was passed making it the duty of every person using weights and measures, to allow and permit the standard keeper to examine and adjust by the standard, once in every two years, their weights and measures used in weighing. This review of the legislation upon the subject throws light upon the construction of the words used in the clause of sec. 3073, upon which plaintiff's alleged cause of action is founded. It will be conceded, that as the statute stood from 1823 until 1893 no duty was imposed upon any other persons than "traders or dealers by profession and millers," to have their weights and measures stamped once, and "*every two years*

*thereafter.''* That being so, when the legislature came to impose a penalty for neglecting to "comply with the requisites of this section," it confined the penalizing language to "every person using, buying or selling." It will be noted that they are the same words used in the act of 1818, ch. 965, which is expressly limited to "every dealer buying or selling," and a legislative declaration is made in 1823, ch. 48, that they applied to "no person except traders and dealers by profession." It is difficult to foresee the results flowing from such a radical change in a statute which affects almost every home and household in this State, subjecting them to penalties which, if enforced, would seriously embarrass thousands of our citizens.

As the law is now written, it is made the duty of every person using weights and measures in North Carolina to have them tried by the standard-keeper "at least once in every two years." We have no power or right to strike the words out, or to construe them away. The language, in that respect, is too plain for construction. Every housewife, who has draw steelyards, balances, or any other kind of weights, quart or pint measures in her pantry, which she uses for domestic purposes, must allow and permit the standard-keeper *at least* once in two years to try them. Every farmer who *uses* them for his domestic or agricultural purposes to weigh in his cotton, measure in his corn, peas or other crops, whether for his own use or simply to enable him to know the yield of his land, is under like obligation. This strange result is rendered still more so when we turn to the first section of the statute and find that no one, other than a trader or other person, who shall buy or sell, or otherwise use *in trading,* any weights or measures, is required to use such as are according to the standard. In other words, a housewife who has learned that a tumbler holds a half pint, or a farmer that a rock picked up in his field weighs two pounds or a piece of iron one pound, may use it in measuring or weighing, but if

either uses a "weight or measure" they must have it tried by
the standard.    When we turn to sec 3067 we find that any
person who, after demand by the standard keeper for permis-
sion to examine or adjust his weights and measures, shall buy
or sell or barter by such weights, etc., not tried, shall be
penalized—but he may *use* them in any other way with im-
punity.    The plaintiff insists that not only is the duty im-
posed prescribed by sec. 3073, but that for a "neglect to com-
ply" with his demand, every person shall "forfeit fifty dol-
lars," one half of which is for his own use.    We are thus
brought to enquire what, if any, effect shall be given to the
words used in the penalizing clause, "using, buying or selling
by weights and measure."    The plaintiff insists that they
perform no office, have no force and effect.    That the word
*using*, being all comprehensive, overshadows and, for all prac-
ticable purposes, eliminates them.    It is an elementary rule
in the construction of a statute that, in ascertaining the inten-
tion of the legislature, resort must first be had to the lan-
guage used; in other words, the statute must, if possible, be
made to speak for itself.    If the legislature has used language
of clear import, the Court should not indulge in speculation
or conjecture for its meaning.    In applying this rule the
entire sentence, section or statute must be taken into consid-
eration, and every word must be given its proper effect and
weight.    Courts are not permitted to assume that the law-
maker has used words ignorantly or without meaning, unless
compelled to do so to prevent a manifestly absurd result.    It
is a rule of construction, that when words of general import
are used and, immediately following and relating to the same
subject, words of a particular or restricted import are found,
the latter shall operate to limit and restrict the former.    "One
provision may be qualified by another, although it does not
profess to have that effect.    Words expressive of a particu-
lar intent incompatible with other words expressive of a gen-
eral intent, will be construed to make an exception so that

all parts of the act may have effect." "The context may thus
serve to engraft an exception by implication to dispose of an
apparent conflict." 2 Lewis Sutherland, Stat. Const., sec. 345.
"It is the duty of the Court to adopt that sense which har-
monizes best with the context, and promotes in the fullest
manner the apparent policy and objects of the Legislature."
*U. S. v. Winn.,* 3 Sumner, 209. This is illustrated in many
decided cases and appeals to common sense, as if A write B,
"I will come to Raleigh, Southern Railroad, to-morrow,"
would B have any doubt that A meant to say that he would
come on the Southern Railroad to the exclusion of other
roads? . Would his meaning be made clearer if he had writ-
ten "by Southern Railroad?" "What the legislative intent
was can be derived only from the words they have used. The
spirit of the act must be extracted from the words of the act
and not from conjecture *aliunde."* Story, J., in *Gardner v.
Collins,* 27 U. S., 93. "In the construction, both of statutes
and contracts, the intent of the framers and parties is to be
sought first of all in the words and language employed, and
if the words are free from ambiguity or doubt, and express
plainly, clearly and distinctly the sense of the framers of the
instrument, there is no occasion to resort to other means of
interpretation. It is not allowable to interpret what has no
need of interpretation, or, when the words have a definite
and precise meaning, to go elsewhere in search of conjecture
in order to restrict or extend the meaning. Statutes should
be read and understood according to the natural and most
obvious import of the language without resorting to subtle
and forced construction for the purpose of either limiting or
extending their operation." *McCluskey v. Cornwell,* 11
N. Y., 593. In *State v. Cleveland R. R.,* 157 Ind., 288, the
statute required the road to place in a conspicuous position at
its depot a blackboard of fixed dimensions and to write there-
on, at a stated time before trains were due, the time of their
expected arrival. It imposed a penalty for making a false

report. Suit was brought for penalties "for failing to maintain a blackboard and to the failure to put it up in a conspicuous place and to write the required information within the time fixed by the statute." *Hadley, J.,* said: "While it was undoubtedly competent for the Legislature to attach a penalty to the failure to place the blackboard of the prescribed dimensions and put it up in a conspicuous place . . . , it was equally competent for that body to omit a penalty for such things and impose it upon the neglect of what it deemed a more important duty." In *R. R. v. Cohen,* 49 Ga., 627, the statute required standard weights and measures used in *selling* commodities. The Court held that it could not be extended to include weights used by persons in buying, saying: "We have no authority to extend the law to cases not included in its terms. It is a penal law . . . It would be contrary to well settled rules to give this act the construction contended for, or to apply it to cases outside of its plain terms." In *Coe v. Lawrence,* 72 E. C. L. (1 Ellis & B.), 516, it was sought to recover a penalty for violating a statute. Defendant claimed that he was not within its terms. It was insisted that the Court could find an intention to include him. *Lord Campbell, C. J.,* said: "We are not justified in inserting words for the purpose of extending a penalty clause to cases not expressly comprehended in it. . . . . By putting the correct grammatical construction on the words, we may, perhaps, induce greater care on the part of those who frame the laws." Lord Coleridge said: "I never heard that it was allowable to insert words for the purpose of extending a penal clause. . . . . And even if that were not so, it is quite wrong to alter the language of a statute for the purpose of getting at its meaning," and of the same opinion were all the Judges. In *Thomas v. Stephenson,* 75 E. C. L. (2 Ellis & B.), 108, a standard-keeper entered a shop and seized a weighing machine. It was held that the machine was not within the language of the statute and he was com-

pelled to surrender it. In *State v. Cleveland, supra,* the learned Justice said: "The Court must interpret such a statute as it finds it. It cannot supply omissions by intendment." He quotes with approval these words: "When the penal clause is less comprehensive than the body of the act, the Courts will not extend the penalties provided therein to classes of persons or things not embraced within the penal clause, even when there is a manifest omission or oversight on the part of the Legislature." 26 Am. & Eng. Enc., 660. If, as is manifest, the Court cannot insert words to enlarge its scope, certainly they may not strike them out to reach a class of persons which they clearly exclude. We have thus far confined the discussion to the obvious meaning of the words "buying or selling" as related to the word "using." Unless they restrict, limit, the word "using," they have no force or effect, and the lawmakers for more than a century and the several Code Commissions have done a vain thing. We may not thus eliminate the words without violating the first principle of construction.

If, however, the words in controversy are of doubtful meaning, and we were compelled to seek the intention of the Legislature by resorting to other rules, it would be our duty to examine the history of the legislation upon the subject, ascertain the legislative policy in dealing with it. It is perfectly manifest from the original act, the amendments and revisals, that the Legislature never intended to penalize the neglect to have weights and measures *used* for purposes other than buying and selling tested. Again, if, after exhausting all primary rules, we are left in doubt as to the meaning of the statute, we should consider the results likely to flow from a proposed construction and, if they are oppressive, restrictive of primary rights, harsh and inequitable, we should, if possible, without doing any violence to the words used, reject such construction. "When the words are not precise and clear, such construction will be adopted as shall appear most reason-

able and best suited to accomplish the objects of the statute, and when any particular construction would lead to absurd consequences, it will be presumed that some exception was intended by the Legislature to avoid such construction." *Shaw, C. J.,* in *Com. v. Kimball,* 41 Mass., 370. In the light of the history of this legislation and the language used by the lawmakers; it would lead to most startling and unexpected results to hold that every standard keeper in North Carolina may bi-ennially invade the privacy of every home, demand entrance into the pantry of the housewife, the barn or shelter of every farmer and demand, under pain of a penalty of fifty dollars, that he be permitted to test and adjust every weight and measure without regard to the use to which it is put. To so hold would invite a swarm of inquisitive officers extorting fees out of the people or subjecting them to penalties. It is true that the defendant is a corporation, and it may be that it should be included with traders and professional dealers, but, as in the case of millers, omitted from the original act, they should be brought in by legislative enactment and not by judical construction. Again, statutes which restrict private rights of persons, or the use of property in which the public has no concern, should be strictly construed in favor of the citizen. It will never be presumed that the Legislature intends to impose burdens upon the citizen or interfere with his primary rights further than is demanded by the general welfare. While it is a matter of public concern that traders and dealers by profession, engaged in buying and selling, and millers, should be required to use standard weights and measures, and their regulation is within the police power, it is of no concern whatever to the public whether persons using such weights and measures for purely personal, domestic or agricultural purposes, do so. This is clearly recognized by the first section of the statute. To enlarge the penalty clause to include such purposes, even if the language was of doubtful import, would violate this rule

and trench upon the reserved rights of the citizen. We are not permitted to apply rules of construction to corporations, for the purpose of bringing them within penalty laws, and refuse to do so in suits against other citizens. If the Legislature deems it wise to include railroads using weights for fixing the amount of freight to be charged for shipment, it is clearly within its power to do so. We have given to this case our most careful consideration, notwithstanding the small amount involved. In case of doubt, we should find it our duty to resolve such doubt in favor of the citizen and the security of his home from invasion by over-zealous standard keepers, making their biennial visits to extort fees or, upon provoking refusal, from their instituting actions for penalties. While the statute, construed as it was written prior to 1893, is wise and wholesome, if used to annoy and vex the people it will be further restricted by exceptions of counties, as has been done to some extent, until we will have a law requiring the use of standard weights and measures in "buying and selling" in only those counties in which it is not enforced. His Honor rendered judgment of nonsuit because the State was not joined as plaintiff. We affirm his judgment for the reasons set forth in this opinion.

Affirmed.

CLARK, C. J., dissenting: Revisal, sec. 3073, requires "every person using weights and measures," etc., to permit the standard keeper of the county "to try, examine and adjust" them at least once every two years, and especially enumerates, for emphasis, "every trader, or dealer by profession, and every miller." This section further provides, "every person using, buying or selling by weights and measures, who shall neglect to comply with the requisites of this section, shall forfeit $50," etc. Certain counties are exempted from this section, but Surry County is not one of them.

The words "every person using, buying or selling," means,

grammatically, "using, or buying or selling." The words must be given a reasonable construction to effectuate the purpose of the Legislature. To restrict the meaning to "buying or selling" is to eliminate the word "using," which the law-makers put into the statute. It would eliminate "millers" (whom the section expressly mentions) and railroad companies, cotton ginners and others doing a large business with the public, though not buying or selling. It would thus eliminate from the statute the very class whose weights, measures and scales most need "trial, examination and adjustment" for protection to the public, while subjecting to the law every little dealer who buys or sells a few small articles. This surely would seem like "sticking in the bark."

On the other hand the word "using" must be given a reasonable construction with a view to the protection to the public for which purpose the statute was passed. "Using" cannot apply to persons using weights and measures solely for their own purposes. There is no need to protect them against themselves. The object of the statute is to protect the public against those using false or incorrect weights in dealing with the *public,* and such protection is not restricted to those "buying or selling," but embraces those *"using* (or) buying or selling."

Millers and railroad companies come within the definition "using," while "buying or selling" embraces "traders or dealers by profession," named in the statute. Considering the manifest object of the act, which is to protect the public from imposition by those "using (or) buying or selling," it would seem clear that "using" does not apply to those using weights and measures for their own purposes, but that this word is put into the statute for the very purpose of extending the act beyond those "buying or selling," and especially applies to railroads and millers who "use" weights and measures in dealing with the public, though they do not "buy or sell."

NANCE *v.* R. R.

HOKE, J., dissenting: I cannot concur in the disposition made of this case, and am of opinion that a statute, plain in meaning and in the main beneficent of purpose, is likely to have this meaning obscured, and this purpose to a large extent frustrated by too much judicial construction. It has always been considered desirable and necessary that the weights and measures of our people should conform to a known and established standard, for even when owned by private persons, they are not infrequently used by them and their neighbors in transactions of sale and barter, though not to such an extent as to make such persons regular dealers. Pursuant to this laudable purpose, there has been time out of mind, in a section of our statute addressed to the question of weights and measures, a requirement that every person using weights and measures should bring all his weights, measures and steelyards to the standard-keeper of the county where such person shall reside or trade, and have them tried by the standard; and every trader or dealer by profession, and every miller, at least once in every two years thereafter, shall cause their weights, measures, etc., to be examined and adjusted by said standard-keeper, . . . and every person using, buying and selling by weights and measures, who shall neglect to comply with the requisites of this section, shall forfeit $50.

This was the law in the Revised Statutes, enacted in 1836 and 1837, which has the expression: "Every person, whatsoever, using weights and measures shall bring," etc., and the penalty clause was evidently intended to apply to all persons mentioned in the former portions of the section, that is, to every person, whatsoever, using weights and measures, and to every trader and dealer by profession, and to every miller. See Revised Statutes, ch. 120, sec. 4. The distinction in this law between ordinary persons and regular dealers and millers, was that the two last were required to bring their weights to the standard-keeper every two years.

In the Code of 1856, the same law appears in substantially

the same terms.· Revised Code, ch. 117, sec. 5, and also in the Code of 1883, in Vol. 2, sec. 38-41, in substantially similar terms, except that the word "balances and other instruments used in weighing" were added to "weights, measures, and steel-yards," this change having been made pursuant to an amendment in ch. 126 of the Laws of 1866 and 1867. This continued to be the law until the session of 1893, when the Legislature, being well aware of the increasing size of the different weights and measures coming into general use, making it difficult and well nigh impossible to carry some of them at least to the standard-keeper, and being impressed also with the increased importance of having these weights and measures conform to the standard, enacted that, instead of the owners bringing their weights, measures and other implements to the standard-keeper to have them examined and adjusted, it should be the duty of that officer to visit "every" such person using weights and measures, embracing balances and other implements used for weighing, and that they shall allow and permit this adjustment, and that this duty should be performed at least once in every two years. Laws of 1893, ch. 100, 207.

The capable and learned commissioners who framed the Revisal of 1905, have incorporated this amendment into the statute on weights and measures, being ch. 77, sec. 3073, and being aware that in codifying laws it is generally desirable to make as little change as possible in terms used and approved, and the meaning of which has become known, they have placed the·amendment where it belonged, in the former portion of the section, leaving the portion referring to millers, traders and dealers by profession as it had always stood; and the law, as applicable to the question we are discussing, reads as follows:

"SECTION 3073. MAY TEST EVERY TWO YEARS—PENALTY—EXCEPTION.—That every person using weights and measures and steel-yards, embracing balances and other in-

struments used in weighing, shall allow and permit the standard-keeper of the county to try, examine and adjust by the standard at least every two years all the said weights, measures, steel-yards, embracing balances and other instruments used for weighing; and every trader or dealer by profession, and every miller, at least once in every two years thereafter, shall permit their weights, measures, etc., to be examined, adjusted, etc.  .  .  .   and every person using, buying or selling by weights and measures, who shall neglect to comply with the requisites of this section, shall forfeit $50.00."

It was the reasonable and evident purpose of the law-makers to include within the penal clause, in the latter part of the section, all upon whom a duty was imposed in the former part, to allow the standard-keeper to examine and adjust their weights and measures, etc.; that is, every person using weights and measures, millers and all regular traders and dealers.  And in the penalty clause they intend to, and did, employ terms sufficiently broad and comprehensive to include them all—every one using weights and measures, every one buying or selling by weights and measures, and the term "using" being sufficient to include millers and all toll-takers, these last were not repeated; and the codifyers in this penalty clause expressed the legislative intent, by imposing the penalty on every person using, buying or selling by weights and measures.  This is the clear import of the words from their definition, purpose and placing, and the position finds support, if support were needed, by the fact that, in a different section of the act, sec. 3067, a separate penalty is imposed for buying and selling on unadjusted and unstamped weights and measures.

The Court, it seems, being of opinion that to enforce the law as it is written might result in having domiciliary visits on the part of some over-zealous official to the disturbance of the serenity and calm of some imaginary "housewife," do not,

to my mind, interpret the law as it is written, applying it, as required, "to every person using, buying and selling by weights and measures," but have decided to strike out the comma after "using" and insert the word "by" between the words "using" and "buying," thus making the penal clause of the statute read: "And every person using by buying and selling by weight and measures who shall neglect, shall forfeit," etc. And by what authority is this word to be added by the Court to a law which it is clearly within the province of the Legislature to enact? It is a familiar principle of statutory construction that the meaning of a statute must first be sought in the language of the statute itself, and it is only where there is uncertainty in its meaning that construction is to be resorted to and words taken from and added to expressions which the Legislature has seen proper to make.

Says Black on Interpretation of the Law, sec. 26: "The meaning of a statute must first be sought in the language of the statute itself, and therefore, if the language is plain and free from ambiguity and express a simple, definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended to convey."

And this statement of the doctrine is fully supported in numerous and well considered decisions in courts of the highest authority, several of them cited and referred to in the opinion of the Court, notably in *McCluskey v. Cornwell,* 11 N. Y., 601, where *Allen, J.,* for the Court, quotes with approval the rule as well expressed by *Judge Johnson,* in *Newell v. The People* (3 Selden, 97), in these words: "Whether we are considering an agreement between parties, a statute or a constitution, with a view to its interpretation, the thing we are to seek is the thought which it expresses. To ascertain this, the first resort, in all cases, is to the natural signification of the words employed, in the order and grammatical arrangement in which the framers of the instrument have placed them. If thus regarded the words embody a definite mean-

ing, which involves no absurdity and no contradiction between different parts of the same writing, then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed."

Indeed, as stated, it is a well recognized and accepted principle of statutory construction, that when the language of a statute has a definite meaning and its enactment is in the constitutional power of the Legislature, it is not for the courts to alter or set it aside, because they may deem its provisions unwise, or because, in their judgment, it may lead to harmful results.

Said *Nash, Chief Justice,* in *Taylor v. Commissioners,* 55 N. C., 144: "Whether the Legislature acted wisely or not, is a question with which we have nothing to do. The power being admitted, its abuse cannot affect it; that must be for the legislative consideration. It is sufficient that the judiciary claim to sit in judgment upon the constitutional power of the Legislature to act in a given case; it would be rank usurpation for us to enquire into the wisdom or propriety of their acts."

And to what purpose is this alteration of the statute made? One of the chiefest objects of the enactment of this law was to require that the weights and measures of the public millers of the country should be adjusted by the standard and kept free from suspicion, and yet the decision of the Court withdraws from the effect of the penal clause all public millers, for, as a rule, certainly in taking toll, they neither buy nor sell, in the ordinary acceptation of the term; and it withdraws also the weights and measures used in cotton gins, and the now very general method provided for weighing wagons of hay, and other heavy articles, the proprietors of these, as a rule, neither buy nor sell; and, as in this instance, the scales and balances used by railroads, and by which a large portion of the freight rates are fixed and collected, are likewise withdrawn from the penal effects of the statute; all because of an

apprehension that there might be some abuse in the administration of the law to the annoyance of individual owners of these implements.   This apprehension is not original with us. After the enactment of the statute, requiring the standardkeeper to visit all persons using weights and measures, several counties, considering that the law might be subject to abuse by some over-zealous official, had themselves excepted from the effects of the statute.   It was so in Lincoln, Gaston, Beaufort, and some other counties.   In the counties of Camden and Currituck the period was changed from two to four years.   By chap. 378 of the Laws of 1905, quite an elaborate provision was made as to the effects of the law in Wilson County, and it was enacted, as to that county, that: "When any person has had his weights and measures tried by the standard, and stamped or sealed as aforesaid, he shall not be required to have them tried by the standard again unless some responsible person in the county of Wilson shall make oath and file the same with the standard-keeper of said county that he has reason to believe that said weights and measures are not properly adjusted; that notice shall be given the owner of said weights and measures that complaint has been made under oath as aforesaid, and then the owner of said weights and measures shall have them tried, as provided under this act, sec. 3841 of the Code, and be subject to the penalty of sec. 3842."   These ill-advised counties, desiring a change of the law, went to the Legislature for that purpose, erroneously supposing that that body only had the right to make alterations of the kind desired.

Even on grounds of expediency, and in reference to those persons whom the Court holds are not within the penal clause of the statute, the construction adopted is neither wise nor desirable.   Where weights and measures are used for the purpose of exchange and sale, and this is frequently being done by private owners, though not to such an extent as to make them regular dealers, and when they are used for purposes

of measuring toll, as at public mills, cotton gins, etc., or for establishing the amount to be paid for the carriage of freight, as in this instance, there is nothing more harmful than to have suspicion aroused and active as to the integrity of their weights. It is eminently desirable, even from their standpoint, to have the inspection of some public official, whose duty it is to interfere and whose action will serve to correct an erroneous impression concerning them and restore them to the confidence of the community.

Believing that the action of the Court is not grounded on right reason or sustained by any well considered authority, I am compelled to withhold my assent to the decision they have made in this case.