STATE AND TOWN OF WILSON v. J. T. WILLIAMS.

(Filed 22 December, 1916.)

**Spirituous Liquors—Cider—Manufactured, Etc.—Statutes—Exceptions.**

> The right to sell property is one of the incidents of ownership and should not be withdrawn or restricted unless clearly required by statute; and construing together the laws relative to prohibition, chapter 71, Extra Session of the Legislature of 1908, excepting the sale of "cider in any quantity by the manufacturer from fruits grown on his own lands within the State," appearing in substantially similar terms in "An act to prohibit the sale of near-beer," etc., ch. 35, Laws 1911, sec. 3, and the exception from the Search and Seizure Laws, ch. 44, Laws 1913, of "wines and ciders in any quantity from fruits grown on the premises of any persons in whose possession they may be," and ch. 97, Laws 1915, passed primarily to regulate the shipment of spirituous liquor, which is silent upon this subject, it is *Held*, that the sale of cider containing 4.7 per cent alcohol does not come within the inhibition of our statutes, and may be sold by the manufacturer from fruits grown on his own premises within the State, or by his agent, when the parties are acting in good faith.

CLARK, C. J., dissenting.

CRIMINAL ACTION charging defendant with selling cider contrary to law, tried before *Allen, J.,* and a jury, at Fall Term, 1916, of WILSON.

STATE *v.* WILLIAMS.

The jury rendered a special verdict as follows:

"We, the jury impaneled to try this case, return to the court our verdict: That the defendant J. T. Williams, agent of M. T. Williams, sold for gain, in the town of Wilson, on or about the 15th day of September, 1916, to persons to the jurors unknown, and on divers other occasions, apple cider containing 4.7 per cent of alcohol. The cider so sold was manufactured by M. T. Williams from fruits grown on the land of M. T. Williams in North Carolina. J. T. Williams, in selling such cider, was a bona fide agent of M. T. Williams for such purpose, and it was not sold at the place of manufacture, that is, on the lands of M. T. Williams. If the court is of the opinion that the defendant is guilty upon this verdict, we find the defendant guilty; but if the court is of the opinion that the defendant is not guilty upon this verdict, we find the defendant not guilty."

And on such findings, the court being of opinion that defendant was not guilty of any offense, verdict was entered accordingly, defendant discharged, and the State appealed.

*Attorney-General Bickett and Asistant Attorney-General Calvert for the State.*

*No counsel for defendants.*

HOKE, J. The statutes controlling the question in this State have not, thus far, prohibited the sale of "cider in any quantity by the manufacturer from fruits grown on his own lands within the State of North Carolina." This exception, contained in the Laws of 1908, Extra Session, chapter 71, appears in the same or substantially similar terms in chapter 35, Laws 1911, sec. 3, the same being entitled "An act to prohibit the sale of near-beer, beerine, and other like drinks," and chapter 44, Laws 1913, commonly known as the Search and Seizure Laws, excepts from the operative section of the act "wines and ciders in any quantity manufactured from fruits grown on the premises of the person in whose possession they may be." Chapter 97, Laws 1915, was passed primarily to regulate the shipments of spirituous, vinous, or malt liquors, and seems to contain no provision applicable to the facts of this record. It thus appears to be the policy and express purpose of our legislators to except from the operation of the prohibition laws the sale of cider by the manufacturer, when made from fruits grown upon his lands within the State, "and being allowed to sell in any quantity and in any place," it is the evident purpose and meaning of the law that such sales may be effected by any of the ordinary methods by which an owner is allowed to dispose of his property.

This right to sell property, and either by an agent or employee, is one of the incidents of ownership, and should not be withdrawn or

restricted unless the statute clearly requires it. *Nance v. R. R.,* 149 N. C., 366 (2d Ed.); Black on Interpretation of Laws, p. 451.

Even in case of intoxicating liquors, which can only be sold by license duly issued, the license is held to protect the employees and agents of the proprietor selling at the place where the license designates. Black on Intoxicating Liquors, sec. 132, citing *Rungen v. State,* 52 Ind., 320, and other cases. And these excepting provisions, withdrawing cider from the effect and policy of the prohibition laws and, as stated, allowing sales in any quantity and any place, should, by correct construction, operate to allow such sales by the employees and agents of the manufacturer when it is shown, as in this case, that the parties are acting bona fide and the cider is made from fruit grown on the manufacturer's lands.

Whether this exception should continue to prevail because, at a minimum risk, it allows landowners to dispose of their fruit which would otherwise, year by year, rot on their lands and be altogether lost, or whether it should be repealed because it may unduly afford methods of evading the purpose and policy of our prohibition laws, these are matters entirely for legislative consideration, and may not be allowed to affect the construction of the present statutes, which, in our opinion, are clearly designed and framed to enable a manufacturer of cider from his own fruit to dispose of it, and to do so by ordinary methods, in any quantity and at any place.

There is no error in the ruling of the court, and the proceedings below are affirmed.

No error.

CLARK, C. J., dissenting: The general prohibition law of 1908, prohibiting the manufacture or sale of any spirituous, vinous, fermented, or malt liquors, or intoxicating bitters, makes an exception of "the sale of cider in any quantity by the manufacturer from fruits grown on his lands within the State of North Carolina." Laws Special Session 1908, ch. 71, sec. 1.

Experience having proven that this act permitted evasions of the law, the "Near-Beer Act," Laws 1911, ch. 35, sec. 1, provides that "It shall be unlawful for any person or persons, firm or corporation, to sell or dispose of for gain, near-beer, beerine, or other spirituous, vinous, or malt liquors or mixtures, of any kind, and under whatsoever name called, that shall contain alcohol, or cocaine, or morphine, or other opium derivative, except as herein provided."

This contains the same exceptions as the act of 1908 in regard to the sale of cider, "by the manufacturer from fruits grown on his own lands in this State." It is settled that every statute should be "con-

strued according to the intent of the Legislature and so as to repress the evil and advance the remedy." The special verdict finds that this cider contained more than 4 per cent of alcohol. It was not sold by the manufacturer, nor by his servant, but by the defendant, who was an agent or factor. He was not an employee, but an "agent," and presumably he was selling on a commission or at a profit above a certain price. This is not authorized by the statute.

It is apparent that the act of 1908 and all the acts subsequent were intended to treat the sale of alcohol as contrary to the public interest, as a poison of the same nature as cocaine and opium, with which it is associated in the statute. The grant of the privilege to sell cider was intended to be restricted to the manufacturer himself, or at the very furthest by his employee or servant. To permit it to be sold by any "agent" is not in the wording of the statute, and certainly not within its spirit, for this would permit cider containing "more than 4 per cent alcohol," as in this case, to be sold all over North Carolina by "agents" of any manufacturer.

This is contrary to the letter and spirit of the law, which are that the prohibition shall be as effective as possible, which is shown by the fact that whenever this Court has found a defect in the law the next Legislature has always promptly cured the defect. It is also contrary to the general spirit of such legislation which has been shown not only by the almost world-wide restriction of the sale of alcohol and other intoxicants, but by the fact that in twenty-five States and in the great territory of Alaska total prohibition has been voted, and in all the other States (except two) there are large areas of local prohibition, so that 90 per cent of the area of the Union and more than 80 per cent of its population is now under total prohibition. It being the evident intent of legislation to make prohibition more general and entirely effective, is it a reasonable construction to place upon the privilege given a manufacturer to sell cider, "made of his own fruit, on his own land in this State," the construction that an agent, the defendant here, instead of the manufacturer (or his servant) can sell cider containing more than 4 per cent alcohol anywhere in North Carolina?

Is it not more consonant with the rule, that a statute should be construed according to the intent of the Legislature, and to advance the remedy and to repress the evil, to say that the privilege to a manufacturer to sell his own cider made by himself was not intended to go beyond the manufacturer himself, or his servant, or employee under his supervision. It was intended to be a privilege personal to him, and not to be exercised by the defendant or any one else, at any place in North Carolina.

There is ground for giving a personal privilege to one who makes cider of his own fruit grown on his own land, but none whatever to

authorize its sale by any kind of an agent, on any kind of terms, anywhere in the State.

This is an abuse of the privilege, and is not authorized by the statute. Upon the special verdict the defendant was "selling for gain," and he was not "the manufacturer." If it was not intended to restrict the sale to the manufacturer, the act would have permitted a sale of cider without any restriction.