STATE OF NORTH CAROLINA ON RELATION OF THE UTILITIES COMMISSION v. CAROLINA COACH COMPANY, QUEEN CITY COACH COMPANY, ATLANTIC GREYHOUND CORPORATION, SEASHORE TRANSPORTATION COMPANY, AND SMOKY MOUNTAIN STAGES, INC.

(Filed 10 December, 1952.)

**1. Statutes § 5a—**

Where the same statute contains a particular provision, which embraces the matter under consideration, and a general provision, which includes the same matter and is incompatible with the particular provision, the particular provision must be regarded as an exception to the general provision, and the general provision must be held to cover only such cases within its general language as are not within the terms of the particular provision.

**2. Utilities Commission § 2: Carriers § 2—**

The North Carolina Utilities Commission does not have regulatory supervision of operations devoted exclusively to the transportation by motor vehicle of the *bona fide* employees of industrial plants to and from the places of their employment even in cases where the persons conducting such operations are engaged at the same time or at other times in carrying on the callings of common carriers by motor vehicle. G.S. 62-121.47 (1) (3).

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by Atlantic Greyhound Corporation, Carolina Coach Company, Queen City Coach Company, Seashore Transportation Company, and Smoky Mountain Stages, Inc., from *Carr, J.,* at March Term, 1952, of WAKE.

Proceeding originating before the North Carolina Utilities Commission and involving the interpretation of the provisions of the Bus Act of 1949 relating to the transportation of *bona fide* employees of industrial plants to and from the places of their regular employment.

The legal question arising on this appeal grows out of the events and statutes mentioned in the numbered paragraphs set forth below.

1. Atlantic Greyhound Corporation, Carolina Coach Company, Gabriel Bus Line, Queen City Coach Company, Seashore Transportation Company, and Smoky Mountain Stages, Inc., are common carriers of passengers by motor vehicle, and as such are engaged in the transportation by motor vehicle in intrastate commerce of passengers for compensation over regular routes and between fixed termini under certificates of public convenience and necessity issued to them by the North Carolina Utilities Commission pursuant to the provisions of the Bus Act of 1949.

2. The certificate issued to Carolina Coach Company specifies that one of its authorized routes as a common carrier of passengers by motor vehicle covers the stretch of United States Highway No. 29 between Landis and Kannapolis.

3. The certificate issued to Gabriel Bus Line limits its operating rights as a common carrier of passengers by motor vehicle to the portions of State Highways Nos. 150, 152, and 153 connecting Mooresville and Landis.

4. On 1 April, 1951, Carolina Coach Company and Gabriel Bus Line executed an agreement in writing whereby Carolina Coach Company leased to Gabriel Bus Line "the privilege of operating three schedules daily between Landis and Kannapolis over the franchise route of Carolina (Coach Company) for the purpose of transporting workers employed in the mills at Kannapolis to and from their places of employment." The agreement was not to "become operative and binding upon the parties . . . except upon the prior written approval of the North Carolina Utilities Commission."

5. On 27 April, 1951, Carolina Coach Company and Gabriel Bus Line made application to the North Carolina Utilities Commission for its written approval of the lease agreement in conformity to Section 20 of the Bus Act of 1949. See: G.S. 62-121.62.

6. On 3 May, 1951, the North Carolina Utilities Commission entered an order denying the application of Carolina Coach Company and Ga-

briel Bus Line for the approval of the lease agreement. It assigned these reasons for its decision: That subsection (3) of Section 5 of the Bus Act of 1949 entirely excludes from the regulatory supervision of the Utilities Commission all operations of any person devoted exclusively to the transportation by motor vehicle of the *bona fide* employees of industrial plants to and from the places of their employment, regardless of whether or not the person conducting such operations is engaged at the same time or at other times in carrying on the business of a common carrier by motor vehicle; and that in consequence of this exclusion the Utilities Commission has no legal authority to approve the lease agreement whereby Carolina Coach Company undertakes to permit Gabriel Bus Line to carry on as a limited privilege an operation which Gabriel Bus Line has full liberty to perform as an unlimited right in common with all other persons.

7. Carolina Coach Company forthwith petitioned the North Carolina Utilities Commission for a rehearing of the application for the approval of the lease agreement under the provision of the North Carolina Utilities Commission Procedure Act of 1949 now codified as G.S. 62-26.6. The petition sets forth specifically that the order denying the application is not warranted by the Bus Act of 1949 for these interdependent reasons: That subsection (1) of Section 5 of the Bus Act of 1949 reserves to the Utilities Commission in express terms regulatory supervision of all operations of any person devoted exclusively to the transportation by motor vehicle of the *bona fide* employees of industrial plants to and from the places of their regular employment if such person is "engaged at the time or other times in the transportation of other passengers by motor vehicle for compensation"; that as a consequence the Utilities Commission has regulatory supervision of the acts of Gabriel Bus Line in operating motor vehicles over the authorized route of Carolina Coach Company between Landis and Kannapolis for the exclusive purpose of transporting *bona fide* employees of industrial plants in Kannapolis to and from their places of regular employment because Gabriel Bus Line is engaged in the transportation of other passengers by motor vehicle for compensation over its own regular route between Mooresville and Landis under the certificate of convenience and necessity issued to it by the Utilities Commission; and that for these reasons the Utilities Commission erred to the prejudice of Carolina Coach Company when it refused to approve the lease agreement on the ground that it has no authority under the law to take such action. Atlantic Greyhound Corporation, Queen City Coach Company, Seashore Transportation Company, and Smoky Mountain Stages, Inc., intervened at this stage of the proceeding as parties "vitally affected by the interpretation and application of Subsection (3) of Section 5 of the Bus Act of 1949," and made common cause with Carolina Coach Company.

8. Subsequent to the filing of the petition for a rehearing, the North Carolina Utilities Commission heard Carolina Coach Company and the intervening parties in oral argument on the question of the correct interpretation and application of the section of law in controversy. Thereafter, to wit, on 29 August, 1951, the Utilities Commission denied the petition for a rehearing in an elaborate majority opinion, which reaffirmed the legal position taken by the Commission in its original order of 3 May, 1951, and rejected the legal position taken by Carolina Coach Company in its petition to rehear. Atlantic Greyhound Corporation, Carolina Coach Company, Queen City Coach Company, Seashore Transportation Company, and Smoky Mountain Stages, Inc., thereupon appealed from the Utilities Commission to the Superior Court of Wake County, assigning error in matter of law.

9. When the appeal was heard at the March Term, 1952, of the Superior Court of Wake County, Judge Leo Carr, who presided, entered a judgment affirming the orders of the Utilities Commission. Atlantic Greyhound Corporation, Carolina Coach Company, Queen City Coach Company, Seashore Transportation Company, and Smoky Mountain Stages, Inc., excepted to this judgment and appealed to the Supreme Court, assigning error in matter of law.

*Attorney-General McMullan and Assistant Attorney-General Paylor for the State of North Carolina on relation of the Utilities Commission, appellee.*

*J. Ruffin Bailey and Fuller, Reade, Umstead & Fuller for Atlantic Greyhound Corporation, appellant.*

*Arch T. Allen and L. P. McLendon for Carolina Coach Company, appellant.*

*Shearon Harris and L. P. McLendon for Queen City Coach Company and Smoky Mountain Stages, Inc., appellants.*

*D. L. Ward for Seashore Transportation Company, appellant.*

ERVIN, J.  This appeal is occasioned by conflicting provisions in the Bus Act of 1949, and presents this question for decision: Does the North Carolina Utilities Commission have regulatory supervision of operations devoted exclusively to the transportation by motor vehicle of the *bona fide* employees of industrial plants to and from the places of their regular employment where the person conducting the operations is engaged at the same time or at other times in carrying on the business of a common carrier by motor vehicle?  As here used, the word "person" denotes "a corporation, individual, copartnership, company, association, or any combination of individuals or organizations doing business as a unit," and the term "common carrier by motor vehicle" signifies "any person which holds

itself out to the general public to engage in the transportation by motor vehicle in intrastate commerce of passengers for compensation over regular routes and between fixed termini." G.S. 62-121.46 (6) (15).

The Bus Act of 1949 is now codified as Article 6C of Chapter 62 of the General Statutes. Section 3 of the Act, which appears in G.S. 62-121.45, confers upon the North Carolina Utilities Commission "full power and authority to administer and enforce the provisions of this article, and to make and enforce reasonable and necessary rules and regulations to that end."

The conflicting provisions of the Act giving rise to the present controversy are subsections (1) and (3) of section 5, which is now embodied in G.S. 62-121.47 and deals with exemptions from regulations.

Subsection (1) of section 5 provides that "nothing in this article shall be construed to include persons and vehicles engaged in one or more of the following services if not engaged at the time or other times in the transportation of other passengers by motor vehicle for compensation: (a) transportation of passengers for or under the control of the United States Government, or the State of North Carolina, or any political subdivision thereof, or any board, department or commission of the State, or any institution owned and supported by the State; (b) transportation of passengers by taxicabs or other motor vehicles performing *bona fide* taxicab service and carrying not more than six passengers in a single vehicle at the same time and not operated on a regular route or between fixed termini; provided, no taxicab while operating over the regular route of a common carrier outside of a town or a municipality and a residential and commercial zone adjacent thereto, as such zone may be determined by the Commission as provided in (h) of this paragraph, shall solicit passengers along such route, but nothing herein shall be construed to prohibit a taxicab operator from picking up passengers along such route upon call, sign or signal from prospective passengers; (c) transportation by motor vehicles owned or operated by or on behalf of hotels while used exclusively for the transportation of hotel patronage between hotels and local railroad or other common carrier stations; (d) transportation of passengers to and from airports and passenger airline terminals when such transportation is incidental to transportation by aircraft; (e) transportation of passengers by trolley buses operated by electric power derived from a fixed overhead wire, furnishing local passenger transportation similar to street railway service; (f) transportation by motor vehicles used exclusively for the transportation of passengers to or from religious services; (g) transportation of *bona fide* employees of an industrial plant to and from their regular employment; (h) transportation of passengers when the movement is within a town or municipality exclusively, or within contiguous towns or municipalities and within a residential and

commercial zone adjacent to and a part of such town or municipality or contiguous towns or municipalities; provided, the Commission shall have power in its discretion, in any particular case, to fix the limits of any such zone."

Subsection (3) of section 5 specifies that "none of the provisions of this section nor any of the other provisions of this article shall apply to motor vehicles used for the transportation of passengers to or from religious services and/or in the transportation of *bona fide* employees of an industrial plant to and from places of their regular employment."

The general provision of subsection (1) of section 5 of the Bus Act of 1949 to the effect that the Utilities Commission retains regulatory supervision of all operations otherwise exempted from the coverage of the Act if such operations are conducted by persons "engaged at the time or other times in the transportation of other passengers by motor vehicle for compensation" is certainly broad enough to give the Utilities Commission regulatory supervision of operations devoted exclusively to the transportation by motor vehicle of the *bona fide* employees of industrial plants to and from the places of their regular employment where such operations are conducted by a person who is engaged at the same time or at other times in carrying on the business of a common carrier by motor vehicle; and the particular provision of subsection (3) of section 5 of the Bus Act of 1949 to the effect that neither section 5 nor any other provisions of the Bus Act "shall apply to motor vehicles used . . . in the transportation of *bona fide* employees of an industrial plant to and from places of their regular employment" is certainly emphatic enough to exclude from the coverage of the Act and the regulatory supervision of the Utilities Commission all operations devoted exclusively to the transportation by motor vehicle of the *bona fide* employees of industrial plants to and from the places of their regular employment, irrespective of whether or not such operations are conducted by persons who are engaged at the same time or other times in carrying on the callings of common carriers by motor vehicle.

This case lends itself to much writing, and tempts the appellate judge to cite many legal authorities and to split many legal hairs. When all is said, however, the case must turn on one or the other of two conflicting provisions of the same statute, and the Court must invoke the aid of the appropriate canon of construction in deciding which provision is to prevail.

The relevant canon of construction may be stated in this way: Where the same statute contains a particular provision, which embraces the matter under consideration, and a general provision, which includes the same matter and is incompatible with the particular provision, the particular provision must be regarded as an exception to the general provi-

sion, and the general provision must be held to cover only such cases within its general language as are not within the terms of the particular provision. *In re Steelman,* 219 N.C. 306, 13 S.E. 2d 544; *School Commissioners v. Aldermen,* 158 N.C. 191, 73 S.E. 905; *Nance v. R. R.,* 149 N.C. 366, 63 S.E. 116; *Handtoffski v. Chicago Consol. Traction Co.,* 274 Ill. 282, 113 N.E. 620; 50 Am. Jur., Statutes, section 367; 59 C.J., Statutes, section 596.

When the conflicting provisions embodied in subsections (1) and (3) of section 5 of the Bus Act of 1949 are read in the light of this canon of construction, it is manifest that the particular provision of subsection (3) must be regarded as an exception to the general provision of subsection (1). This being true, the North Carolina Utilities Commission does not have regulatory supervision of operations devoted exclusively to the transportation by motor vehicle of the *bona fide* employees of industrial plants to and from the places of their employment even in cases where the persons conducting such operations are engaged at the same time or at other times in carrying on the callings of common carriers by motor vehicle.

This decision necessitates the affirmance of the judgment.

Affirmed.

PARKER, J., took no part in the consideration or decision of this case.