Ruffin, C. J.
 

 The principal question arises on the first section of the Rev. Stat. ch. 34, and. the act of 1848, ch. 70. The former enacts. “ that no person, who shall be convicted of any wilful burning of any dwelling house, or any part thereof, or any barn then having grain or corn in the same, or store house, grist or saw mill-house, or any building erected for the purpose of manufacturing any article, shall be admitted to the benefit of clergy; but every person, so convicted, shall be excluded. thereof and shall suffer death.” The latter is entitled “an Act to protect houses and enclosures from wilful injuryand it enacts, “that, if any person shall unlawfully and wilfully burn any uninhabited house, out house, or other building, or shall unlawfully and wilfully demolish, pull down, deface, or by other ways or means destroy, injure, or damage any dwelling house, or any uninhabited house, out house or other building, or shalbunlawfully burn, &c., any fence, &c., he or she shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by fine or imprisonment or both, at the discretion of the Court, in which such conviction shall be had and it further en»
 
 *456
 
 acts, that it should be iu force from the 1st day of March following.
 

 Several considerations induce the belief, that, by the Act of 1S46, it was in fact intended merely to supply those defects in the common and statute law, whereby certain injuries
 
 to houses
 
 and enclosures were dispunisha-ble as crimes, and treated as civil injuries only. It had beén held, that burning and pulling down vacant houses or enclosures were not indictable, as for malicious mischief at common law ; and the probability is, as urged by the Attorney General, that the Act meant simply to make acts of that kind indictable, and' to leave those acts,which were before crimes, to the operation of those laws, which constituted them crimes. The hypothesis is rendered plausible by the circumstances, that the Revised Statute specifies certain buildings as the subjects of felonious arson, while that clause in the subsequent act, which concerns burning, does not designate ©ne of them by name ; that it has no express clause of repeal, and makes no allusion in its title or body to the Revised Statute : that it was not to operate immediately, but to go into force at a future day, thus indicating' a purpose to, create offences thereby and to give notice of them. Moreover, it is n.ot known, that any legislative dissatisfaction was expressed with the protection, -which the previous law afforded for dwelling houses and the other erections enumerated in the Act of 1836. lienee, it may be well argued, that the intention was to protect buildings, which were not before protected, and not to take away any protection, then existing. -But those considerations cannot authorize a construction in opposition to the plain words of the act- If it was a remedial statute and concerned private rights merely, they would have more weight, and, perhaps, be sufficient to justify the Court in reading the Act so as to make it meet the mischief. In questions touching crimes and punishments, however, and. especially where life is
 
 *457
 
 affected, statutes are to be received more literally, both in the provisions creating or abrogating crimes, and affixing punishments. The interpretation of such statutes is to be benignant to the accused; and, therefore, words in his favor cannot be rejected. It is perfectly settled as a rule of construction, that, if, by the common or statute law, an offence, for example, be a felony, and a subsequent statute by an enactment, merely affirmative, lessen its grade or mitigate the punishment, the latter is to that extent an implied repeal of the former. If this act had said, that the burning of any uninhabited house or out house should be a misdemeanor, then it would be clear, that the dwelling house — that is, an-, inhabited house— and its out-houses would have been left to the protection of the old law. The subjects of the enactments would be different and the two acts could not well stand together. But suppose that part of the act had said, in so many words, that the burning of any dwelling house, uninhabited house, or out house, saw mill house, or barn, should be a misdemeanor, punishable by fine or-imprisonment. In that case it could not be argued, that the former act was not repealed, whieh made the burning of a dwelling house or mill a capital felony. The two provisions would then be absolutely inconsistent in respeet to- one and the same building, mentioned specifically in both acts. In effect, it is the same thing here, at least as respects mills and the other erections mentioned in the act of 1836-, excepting, perhaps, dwelling bouses. It is so by force of the words “other buil'din-gs” in the act of 1846: which are broad enough to include, and do therefore include them, unless excepted expressly or by a plain and almost necessary implication. Perhaps a dwelling house may b© excepted out of the operation of the el'ause in the act of 1846, which relates to the burning of houses, and left under the act of 1836, because, in the clause, which immediately follows, and relates to destroying or defacing
 
 *458
 
 buildings, dwelling house is one of those enumerated and protected. “Dwelling house” was inserted there, because, before, the defacing of it was not. a crime, any more than the defacing of an “ uninhabited house,” and therefore they alike required protection then ; and hence the inference is rational, that “dwelling house” may have been omitted in the prior part about burning, because it was already a felony to burn that. Perhaps, that may be so; but it is at least doubtful, and it is to be hoped the Legislature will not allow such a doubt to rest upon so important a point as the security of men’s habitations from the deliberate and diabolical act of burning, and the degree of punishment to be inflicted therefor. But if that structure of the two clauses of the sentence will justify that construction as to dwelling houses, it must, necessarily, be restricted to them and cannot extend it to barns and mills; because neither barns nor mills are • mentioned in either clause of the act of 1846, but in both are included, if at all, under the same description, “other buildings.”' For, when it is argued that those words “other buildings” do not include dwelling houses, as the subjects of arson, for the reasons just assigned ; and, therefore, that they do, not include barns and mills, since, like dwelling houses, they also were protected b.y the Act of 183G, the answer presents itself, that these barns and mills are not within any part of the act of 1846, and thus one- of its main objects would, be defeated. The analogy between dwelling houses and barns and mills must necessarily be kept up throughout, if acted on at all j and therefore, if a mill be not within “othfer buildings” as to the burning, because a dwelling house is not, so neither can it be as to defacing or destroying, for the same rear son. Yet it is very certain, that the Legislature would be much surprised to hear, that, notwithstanding they have enacted, that wilfully to demolish, pull down,deface, or by other means destroy any dwelling house, uninhabi
 
 *459
 
 ted house, or
 
 other building,
 
 should be a misdemeanor, yet the Courts held it to be no offence to pull down a mill or for a mob to demolish a cotton factory. Undoubtedly that part of the act does protect all buildings, including mills, from malicious destruction. It seems to follow necessarily, that under the very same terms they must be included in the prior part of the section, although, in the one clause, the act creates a crime in respect to them, and, in the other, it lessens the crime previously existing in respect to them, and mitigates its punishment. It is possible. this may not have been intended by the Legislature, and that the phraseology of the bill may have been adopted from inadvertence. If so, it is in the power of the Legislature to alter it. But. in the mean time, the Courts must be governed by the language used ; for that is the only light in this case to guide us to the intent. When the Legislature says expressly, that the burning .of any “uninhabited house or
 
 other building’'
 
 thereafter
 
 “shall
 
 be deemed a misdemeanor,” it is impossible for the Court to hold, that, according to the law as it previously stood, the burning of another building, namely, a saw mill, is still a capital felon}’-. The Court, therefore, holds, that the prisoner’s offence was not a felony, and that he was erroneously sentenced to be hanged.
 

 The effect of the foregoing conclusion is now to be considered. For the prisoner it was contended, that, although he was conviced of an act, which is in law a mis* demeanor, yet he could not be punished for it, because the indictment charged it as a felony. The reason does not strike one as very satisfactory; for the truth appears up. on the record, so that the appropriate punishment for the offence, as it legally is, may and must be inflicted. It does not raise the grade of a crime, although the indictment does apply the epithet
 
 “•felonice”
 
 to that, which is not a felony. As, if an indictment charge that one “feloniously an assault, did make” bn another, it -would
 
 *460
 
 still be but an indictment for an assault merely. It is true, that in England, a count for a felony and one for a misdemeanor cannot be joined; for, by the law of that Country, the modes of defence and trial are different. It is probable too, that there an indictment might not be held good, which charged a misdemeanor as a felony— especially, if it appeared in the record, that the party was tried as for a felony; because in that case the accused would not not have had the benefit of counsel, to which he would have been entitled, if tried for a misdemeanor.
 
 Webster’s case,
 
 1 Leach. 12. 1
 
 Chitty Cr. L. 250.
 
 But those reasons have not the same force in our law. Our Courts would no doubt not suffer the accused to be embarrassed by different counts of felonies and misdemeanors, and'would put the prosecuting officer to an election to proceed on one or the other. But the accused is put to no disadvantage here by charging that as a felon}', which is not one. In the first place, as has been observed, charging it'to be a felony does not make it one ; .and the trial might still be had as for the misdemeanor, and commonly would be. But if the trial were as for a felony, the accused would have no cause for complaint; for, instead of impairing his rights, it would add to his privileges, as he would, in each case, be entitled to counsel upon a trial as for a felony, and he would have thirty five challenges of jurors, whereas he is entitled to only four in other cases. We can see no ground, therefore, why, upon such a conviction, the Superior Court might not have sentenced the prisoner to fine and imprisonment.
 

 Another enquiry follows ; which is, whether that can now be done. The Court is of opinion, that it may. At common law-, the rule, as to the effect of reversing a judgmeut for error in the judgment, appears to be different in criminal and civil cases. In the latter, where the error is in the judgment merely, the Superior Court is wisely allowed to reverse that given and then to give
 
 *461
 
 such judgment as the Court below ought to have given.; for the merits have been tried and further litigation is useless. But Lord Coke lays it down with respect to criminal cases, that “if the judgment be erroneous, both that and the execution and all former proceedings shall be reversed by writ of error” — 3
 
 Inst. 210 ;
 
 and the passage is cited by Sergeant Hawkins with approbation.
 
 2 Hawks. P. C. B. 2 C.
 
 50,
 
 S.
 
 9. Although, at one time, the position seems to have been doubted, yet it has been more recently held, that upon reversal for error in the judgment, as where the proper punishment was death, but that laid was transportation, the Court of error had not power to pass the proper sentence, nor remit the case for that purpose to the Court which tried it. but was obliged to discharge the prisoner.
 
 Rex v.
 
 Ellis, 5 B. and C. 395.
 
 Rex
 
 v.
 
 Bourne, 7
 
 Ad. and Ellis. 58. So that, although the conviction be regular and proper, an error in a sentence precludes the power to give a right one ; and from the recent case of O’Connell, such seems still to be deemed law by the highest tribunal in that Country, as upon the reversal of the judgment in the House of Lords, the accused was not sent back for a proper sentence, but discharged. We own, that we can perceive no good reason for the rule ; and therefore that we consider the Legislature of the State wise in having altered it, as, we think, has been done. In prescribing the jurisdiction of this Court, the Statute enacts, that the Court shall have power to determine all questions at law, brought before it by appeal from a Superior Court, and in every case may render such sentence and judgment, as on inspection of the whole record it shall appear to them ought in law .to be rendered thereon ; provided, that, in criminal cases, the decision of the Supreme Court shall be certified to the Superior Court, which shall proceed to judgment and sentence agreeably to the decision of the Supreme Court and the laws of the State. It thus appears that this Court
 
 *462
 
 in no criminal case gives judgment — either modifying or even affirming the judgment below. But it decides upon the whole record what ought to have been the judgment, and certifies that accordingly to the Superior Court, 'where, as the case may be, a
 
 venire de novo
 
 is awarded, or the former judgment re-pronounced, or modified, as directed by this Court, The defendant is not before this Court at all, but remains below, and a transcript only is sent here ; and our decision upon that is remitted to the Superior Court, for further proceedings there in conformity to it. It is clear, therefore, that this Court may sajr, not only that a wrong judgment was before given, but what would have been the right one, and that the Superior Court is to proceed accordingly. The power of this Court in prescribing the judgment is. indeed, necessarily subject to the limitation, that, where the punishment is discretionary, the kind only can be prescribed, leaving the measure to the Judge on the Circuit. Such has been the course since the Court "was constituted, we believe. The cases of
 
 Kearney,
 
 1 Hawks. 53 ; of
 
 Yeates, 4
 
 Hawks. 187; and of
 
 Seaborn, 4
 
 Dev. 305 are examples of it; and there have been many others.
 

 The Court therefore holds, that the judgment of death must be reversed, and the case remitted to the Superior Court with directions to proceed to pass sentence on the prisoner, upon the conviction, of fine or imprisonment or both, at the discretion of the Superior Court, and also to give judgment against him for the costs of the prosecution.
 

 Per Curiam. Ordered accordingly.