CLARK, C. J., and HOKE, J., dissenting.
The defendant was charged in the recorder's court of the town of Wilson with blocking Tarboro Street crossing, in said town, for twenty minutes with a freight train, in violation of the following town ordinance: "No railroad company nor engineer in charge of any train of any railroad company shall run or operate in or through the town of Wilson any locomotive or car or train of cars at a higher rate of speed than 10 miles per hour, and every engineer in charge of any train or locomotive running through the town of Wilson shall ring the bell of such locomotive while same is being run and operated through said town; no railroad train or locomotive shall block any street crossing for a longer period than ten minutes, and any engineer in charge of any train or locomotive of any railroad company violating any of the provisions of this section shall be fined not more than $10 for each and every offense: Provided, nevertheless, that the rate of speed hereinbefore prescribed shall not *Page 164 
apply to any train running in or through the said town between the hours of 11 o'clock p.m. and 6 o'clock a.m., but all trains operating between such hours may be run and operated at a reasonable rate of speed." Defendant was adjudged guilty by the recorder, and appealed. In the Superior Court the jury rendered a special verdict, finding that a train of cars belonging to defendant blocked the said crossing, on 27 November, 1913, for more than ten minutes, and that there was an engineer in charge of the train at the time, his name being unknown to the jurors. This finding was based upon the admission of the facts by the defendant only for the purpose of the trial. No charge was made against the engineer. The jury having submitted to the court the (104) question as to defendant's guilt in the usual form, and the presiding judge, Hon. William M. Bond, having ruled that, under the said ordinance and the findings of fact in the verdict, the defendant was not guilty, as the penal provision is confined to the engineer, the jury so found and returned their verdict of not guilty. Judgment was entered for the defendant, and the State appealed.
after stating the facts: We may as well say in limine that our able and learned Attorney-General and assistant, in their argument before us, admitted, with their usual frankness and candor, that as the ordinance prohibited any railroad train or locomotive from blocking any street crossing for a longer period than ten minutes, and provided that any engineer in charge of any train or locomotive of any railroad company violating the provision shall be fined not more than $10, and there was an engineer in charge of the train, the ordinance, in its penal aspect, was manifestly aimed at the engineer as the sole offender and the one who should be made to suffer for doing the forbidden act. He then added: "We know of no principle of law, or any authority to which we can refer the Court, against the decision of the trial judge." In this view of the case we concur. It will hardly be contended that the town did not have the right to make the engineer solely responsible for the blocking of the crossing, if it saw fit to do so, and we think it is equally clear that the ordinance was intended to penalize the engineer alone for doing, or permitting to be done, the forbidden act. Defendant is not charged with running its trains at an excessive rate of speed, and the portion of the ordinance where that is prohibited is the only one in which the words "railroad company" are used. When requiring the ringing of the bell and forbidding the blocking of the crossing, the engineer only is *Page 165 
mentioned, it being reasonably supposed by the draftsman of the ordinance and the town board that if the prohibited acts were committed, the engineer would be the one directly responsible for it, and the only one who could well prevent it, and they very wisely and justly restricted the imposition of a penalty for disobedience of the ordinance to him. It may be seriously questioned if the part of the ordinance relating to the speed of trains is not also confined to him; but we do not decide this, as it is not before us. The ordinance is too plainly worded for any doubt to be entertained as to the intention that the penal clause should be confined to the engineer. It says that very thing, in so many words, and with such directness and perspicuity as to exclude any other conclusion. The words are: "And any engineer in charge of any train or locomotive (105) of any railroad company violating any of the provisions of this section shall be fined not more than $10 for each and every offense."
The law of the case is as well settled as the meaning of the ordinance is obvious. It is fully considered by Justice Connor in Nance v. R. R.,149 N.C. 366. It is there held that we cannot punish even a corporation by the unwarranted extension of the terms of a statute, and especially we cannot insert words, or imply them, for the purpose of amplifying a penal clause, so as to embrace persons or acts not within its spirit and clear intent. It is the penal clause that gives life and vigor to the enactment, and by which alone it can be enforced. It must be remembered that this was not an offense at common law, but solely the creation of this ordinance. The rule then prevails, and must be applied, that when a particular offense is created and the penalty for its commission prescribed, we are confined to that particular remedy, to the exclusion of all others. This is too familiar a rule to be doubted. But in S. v. R. R., 145 N.C. 496, we followed the law as stated by Justice Ruffin in S. v. Snuggs, 85 N.C. 542, as follows: "The statute not only creates the offense, but fixes the penalty that attaches to it, and prescribes the method of enforcing it; and the rule of law is, that wherever a statute does this, no other remedy exists than the one expressly given, and no other method of enforcement can be pursued than the one prescribed. The mention of a particular mode of proceeding excludes that by indictment, and no other penalty than the one denounced can be inflicted. 1 Russell on Crimes, 49; S. v. Loftin,19 N.C. 31. We are convinced that his Honor's ruling in quashing the indictment is correct, in view of the fact that the statute creates the offense, affixes the penalty, and prescribes the mode of proceeding — the mention of the particular method operating to the exclusion of every other." 1 McLain's Cr. Law, sec. 8, thus states the principle: "If the act prohibited has been previously an indictable offense, it will be presumed that the civil penalty therefor is cumulative; *Page 166 
but when the act creates a new offense and makes that unlawful which was lawful before, and prescribes a particular penalty and mode of procedure, that penalty alone can be enforced." We reviewed many of the authorities upon this question in S. v. R. R., supra, but the following extract from that case will suffice to show the decided trend of judicial thought since the early days of the law up to the present time: "In Rexv. Wright, 1 Burr., 543, it was held that `An indictment lies not upon the act of Parliament which creates a new offense and prescribes a particular remedy.' Lord Mansfield said in that case: `I always took it that where new created offenses are only prohibited by the general prohibitory clause of an act of Parliament, an indictment will lie; but where there is a prohibitory particular clause, specifying only particular remedies, (106) there such particular remedy must be pursued; for otherwise the defendant would be liable to a double prosecution — one upon the general prohibition and the other upon the particular specific remedy.' And when afterwards informed that the counsel for the Crown `gave up the matter,' he replied: `I do not wonder at all at it; I thought he would do so. I have looked into it and there is nothing in it. That case ofCrofton (where the contrary is supposed to have been decided) has been denied many times.' In Rex v. Robinson, 2 Burr., 799-803, the greatChief Justice (Lord Mansfield) said: `But where the offense was antecedently punishable by a common-law proceeding, and a statute prescribes a particular remedy by a summary proceeding, there either method may be pursued, and the prosecutor is at liberty to proceed either at common law or in the method prescribed by the statute, because there the sanction is cumulative and does not exclude the common-law, punishment. 1 Salk., 45. Stephens v. Watson was a resolution upon these principles. In that case, keeping an ale-house without license was held to be not indictable, because it was no offense at common law, and the statute which makes it an offense has made it punishable in another manner.' And again, in the same case, when discussing the same point, he sums up, at page 805, as follows: `The true rule of distinction seems to be that where the offense intended to be guarded against by statute was punishable before the making of such a statute prescribing a particular method of punishing it, there such particular remedy is cumulative and does not take away the former remedy; but where the statute only enacts `that the doing any act not punishable before shall for the future be punishable in such and such a particular manner, there it is necessary that such particular method by such act prescribed must be specifically pursued, and not the common-law method of an indictment.' In Castle's case, 2 Cro. Jac., 644, it was resolved that where a statute imposes a penalty for doing a thing which was no offense before, and *Page 167 
provides how it shall be recovered, it shall be punished by that means and not by indictment. The offense being new, the particular mode of punishment must be pursued."
And Justice Connor, in Nance v. R. R., supra, to which we have already referred in a general way, states the rule to the same effect as to penal statutes or ordinances. He says, at p. 373:
"We have no authority to extend the law to cases not included in its terms. It is a penal law. It would be contrary to well settled rules to give this act the construction contended for, or to apply it to cases outside of its plain terms. In Coe v. Lawrence, 72 E. C. L. (1 Ellis and B.), 516, it was sought to recover a penalty for violating a statute. Defendant claimed that he was not within its terms. It was insisted that the court could find an intention to include him. Lord Campbell, C. J., said: `We are not justified in inserting words for the purpose of extending a penalty clause to cases not expressly comprehended in it. By putting (107) the correct grammatical construction on the words, we may, perhaps, induce greater care on the part of those who frame the laws.'Lord Coleridge said: `I never heard that it was allowable to insert words for the purpose of extending a penal clause. And even if that were not so, it is quite wrong to alter the language of a statute for the purpose of getting at its meaning'; and of the same opinion were all the judges." And again, something which is still more to the very point: "In S. v.Cleveland, 157 Ind. 258, the learned justice said: `The Court must interpret such a statute as it finds it. It cannot supply omissions by intendment.' He quotes with approval these words: `When the penal clause is less comprehensive than the body of the act, the courts will not extend the penalties provided therein to classes of persons or things not embraced within the penal clause, even when there is a manifest omission or oversight on the part of the Legislature," citing, also, 26 A. and E. Enc., 660.
Now, in this case, the penal clause is plainly restricted to the engineer, and the company is not mentioned at all. The town council undoubtedly had the right to so provide, and if it had intended otherwise it would have been very easy to have expressed itself with perfect clearness. But the reason we find no such words is that it never intended any such thing. A penalty of $10 imposed on the real offender was deemed adequate for the purpose of prevention, or of punishment in case of a violation. We are warned, in McClosky v. Cornwall, 11 N.Y. 593, that in construing a statute or any ordinance we should seek for the meaning first of all in the words, and the enactment should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of *Page 168 
extending its operation. See Nance v. R. R., supra, at p. 372, where this case is cited with approval. The natural and obvious meaning of this ordinance is that no locomotive or train of cars shall be permitted by the engineer to block a crossing more than ten minutes, and if he does permit it he shall pay the penalty of $10. This is not only the natural rendering of the ordinance against blocking crossings, but it is the reasonable and just one. The engineer has control of the train, his hand is on the throttle, and he commands the brakes, and he can start or stop it whenever he pleases, and should be held responsible for violating the ordinance. Why punish both, when it is evident the board that passed the ordinance thought one punishment sufficient? As said by JusticeConnor, in Nance v. R. R., supra, we must construe the ordinance as we find it, and not as we may think it should be; and to use his language more exactly: "We should not be permitted to apply rules of construction to corporations, for the purpose of bringing them within penalty laws, and refuse to do so in suits against other citizens." That (108) case we consider directly in point, as there it appeared that the words in the first part of the statute were broad and comprehensive, but the Court restricted them to that class against whom the penalty was denounced, we being then of the opinion that the penal clause of the statute restricted the prior clauses, so as to confine the entire act, in its operation, to those named in the penal clause. This is a familiar doctrine and has had frequent illustration and application in the cases. An eminent writer has said that the law delights in the life, liberty, and happiness of the subject, and deems statutes which deprive him of these, or of his property, however necessary they may be, in a sense as in derogation of his natural right or as curtailing his natural privilege; and for this and kindred reasons, as well as for the reason that every man should certainly know when he is guilty of a crime, statutes, and of course ordinances, which subject one to a punishment, or penalty, or forfeiture, or to summary process, calculated to take away his opportunity of making a full defense, or in any way depriving him of his liberty, are to be strictly construed. "Such statutes are to reach no further in meaning than their words; no person is to be made subject to them by implication; and all doubts concerning their interpretation are to preponderate in favor of the accused." 1 Bishop Statutory Crimes (Ed. 1873), 193, 194. Thus, Lord Mansfield, in construing 5 Eliz., ch. 4, sec. 31, against exercising a trade without serving the seven years apprenticeship, said: "The constructions made by former judges have been favorable to the qualifications of the persons attacked for exercising the trade, even where they have not actually
served apprenticeships. They have, by a liberal interpretation, extended the qualifications for exercising the trade much beyond *Page 169 
the letter of the act; and have confined the penalty and prohibition to cases precisely within the express letter"; and he further said: "I think Mr. Bishop has laid his foundations right, against extending the penal prohibition beyond the express letter of the statute. First, this is a penal law; second, it is a restraint of natural rights, and, third, it is contrary to the general right given by the common law of this kingdom." The defendant was adjudged not guilty and was discharged of the penalty.Raynard v. Chase, 1 Burrows, 2. Chief Baron Pollock said, inBowditch v. Balchin, 5 Exch., 378: "When the liberty of the subject is concerned, we cannot go beyond the natural construction of the statute." "In expounding penal statutes it is an established rule that the construction must be strict as against the defendant, but liberal in hisfavor." Gould, J., in Myers v. The State, 1 Conn. 502. "Penal statutes are construed strictly against the subject, and favorably and equitably for him." 1 Hawk P. C. (Curw. Ed.), p. 90, sec. 8. And see S. v. Upchurch,31 N.C. 454, and the observations of Lord Mansfield in Rex v.Parker, 2 East P. C., 592. See, also, United States v. New BedfordBridge, 1 Woodb. and M., 401. In S. v. Upchurch, supra, (109)Chief Justice Ruffin regarded it as a perfectly settled rule of construction that the interpretation of penal statutes is "to be benignant to the accused, and words in his favor should not be rejected." And it has also been said that the circumstances will be rare in which any court will so extend an enactment by construction or implication as to involve penal consequences not within the express words. Of course, all rules should be so administered as not to work an absurdity or defeat the purpose of the law, but the rule of close, or even literal, construction is generally invoked when construing a penal statute, in order to ascertain the intention and to confine its operation strictly within the limits fixed by the Legislature. It is an ancient but just and equitable doctrine which extends a penal statute beyond its words in favor of a defendant, while holding it tightly to its words against him. But whatever the rule may be, we should not be astute to include a person not within the terms of the penal clause, either by argument or construction. It should, at least, be very plain that he was intended to be embraced by it; and certainly that is not the case here, as it was clearly the intent to restrict the punishment, and in the form of a penalty, to the engineer. This is the natural and grammatical, as well as the legal, construction of the ordinance.
Where the language of a statute or ordinance is clear and its meaning unmistakable, there is no room for construction, but we merely follow the intention as thus plainly expressed. The argument drawn for *Page 170 
inconvenience has no application in such a case. Whether it would be better that the law should be different is a matter solely for the lawmaking body to decide, and not for us. We simply enforce the law as we find it, and according to its plainly expressed meaning. Courts will not make any interpretation contrary to the express letter of a statute, for nothing can so well explain the meaning of the makers of it as their own direct words, since language is the exponent of the intention (index animi sermo), and, as Coke says, that is a very bad interpretation which corrupts the text (malidicta exposito quoe corrumpit textum). 11 Rep., 34; Broom's Legal Maxims (6 Am. Ed.), star page 598. It is better to abide by the written word in the interpretation of all written instruments, for our views as to what should be the law, or what the public policy, may not accord with that of the legislative body.
There was no error in the ruling of the court below.
Affirmed.