The evidence was to the effect that plaintiff, on a dark night, about seven o'clock p.m., 1 February, 1930, while riding with her husband in a two-door Ford coach, going west on Green Street in Wilson, N.C. was seriously injured by defendant's train at the crossing of defendant's railroad and Green Street.
Dr. T. P. Lane, a physician and surgeon (local surgeon for defendant), after describing her injuries, testified, in part: "During the first few days she was in the hospital, which I include in the first five days, this lady's condition was very grave. We were very apprehensive about her. It looked as though she was going to die in spite of all we could do, required stimulation in various forms and injection of fluids into her veins and after that she showed signs of improvement."
Plaintiff, at the time of the injury, was 38 years of age, and was the mother of three little children.
Green Street in the town of Wilson, where plaintiff was injured, at the point where the line of railway of the defendant crosses said street, bears a heavy and congested traffic of automobiles, motor trucks, wagons, bicycles and pedestrians. It is one of the principal streets of the town of Wilson, a town of about 15,000 people, and the double track of the railroad of the defendant crosses said street about midway the length thereof. The passenger station of the defendant is situate between Nash and Green streets and the umbrella sheds of the passenger station extended from Nash Street to Green Street along by the side of the railroad track. The defendant operated a great number of trains, switching and yard engines, each day on its tracks, all of which run over and across Green Street. There was a quantity and a congestion of street traffic along said street. Large number of trains regular and special, on stated schedules and without schedule, and a number of shifting and yard engines and cars are operated by the defendant over said crossing.
J. O. Hearne, a witness for plaintiff, testified, in part: "Cars cross there almost continuously when traffic is heavy, makes heavy traffic. What I mean to say is this — in the busy season at certain hours of the day it is a great deal of traffic. From five o'clock in the afternoon until eight at night the traffic is pretty heavy at that crossing." *Page 674 
Lloyd Lucas, a witness for plaintiff, a police officer, testified in part: "I would say from 350 to 400 cars a day pass there at that time of the year. I am familiar with all that territory. That house on the east side of the railroad track, situate on your left going up towards the track, that house from the first railroad track, from the main line, I don't know exactly how far it is, but not over 25 steps from the main line to the house. The ice cream factory is situate just across on the other side."
Plaintiff's husband, who was driving the Ford, going westward, on approaching the defendant's tracks on Green Street, slowed down to 3 or 4 miles an hour and crept upon the track at practically no rate of speed to cross the tracks. The defendant's train gave no signal of its approach to the crossing, it was rolling, practically making no noise. It was a fast passenger train going north, only runs during the winter months, running between 25, 30 and 40 miles an hour as it approached Green Street. It was a fast Florida train from Florida to New York, carrying winter tourists. It does not stop in Wilson. When plaintiff's husband saw the train he brought his car to a stop and was able to get out. A witness testified "I saw a man sail out." But plaintiff was struck and the auto badly torn up.
C. P. Hocutt, a traffic officer in Wilson, witness for plaintiff, testified, in part: "Since I was in court yesterday I have been to Green Street crossing and measured the distance with a tape line from the northbound track to the corner of the house on Green Street. The exact distance from the corner of the house to the end of the cross tie nearest the railroad is 46 1/2 feet."
A. C. Sanders, husband of plaintiff, testified, in part: "I own the car . . . My wife is not in business with me and she has nothing whatever to do with my business. . . . As we turned into Green Street going west we were driving towards the railroad. Leaving the buildings beyond the first block the ice cream factory is on the north side of Green Street next to the railroad, a couple of little frame buildings on the left. Very poor lights on the east side. I don't think any lights on it. . . . After passing the corner of the house if there had been any obstruction it was dark and I couldn't see. There were lights across the railroad. The railroad shelter was brilliantly lighted across the track. When I passed the house you could see the corner of the shed. That extends up almost to Green Street. I couldn't see anything else that night. The station is beyond the shed. I don't know what kept me from seeing the train which was on my side of the shed. I looked. When I saw it it was right on me. The light was absolutely burning on the train. I don't know what would have kept me from seeing the train if I had cut my eyes and had turned my head. I did look and *Page 675 
when I saw it I stopped. The first time I saw the train I was right on the track. Just time I saw it I was right on the track. On the other side, looking from west to the east it was no light. Looking west from my side it was brilliantly lighted from the station clear on down to the filling station. If I had looked I don't know what there was to keep me from seeing. When I saw it I stopped. My engine was right on the track, right at the track and the train hit it. I jumped out and my wife didn't have time to get out. . . . I seen the train when it was right on me. I was right in front of it then. I didn't see it before. I had not heard it. I did not hear the whistle blow nor the bell ring. I said yesterday I did not hear it. If I had heard it I would have stopped. I didn't hear either the bell or the whistle."
L. W. Brady, a witness for plaintiff, testified, in part: "If I am any judge of speed he (the engineer) was running between 35 and 40 miles an hour. . . . I can hear pretty good but this train ran pretty fast and it is on you before you know it."
An ordinance of the town of Wilson, is as follows: "Section 1. No railroad company or engineer in charge of any train of any railroad company shall run or operate in or through the town of Wilson any locomotive or car or trains of cars at a higher rate of speed than ten miles per hour, and every engineer in charge of any train or locomotive running through the town of Wilson shall ring the bell of such locomotive while same is being run and operated through said town; no railroad train or locomotive shall block any street crossing for a longer period than five minutes, and any engineer in charge of any train or locomotive of any railroad company violating any of the provisions of this section, shall be fined not more than ten dollars for each and every offense; provided, nevertheless, that the rate of speed hereinbefore prescribed shall not apply to any train running in or through the said town between the hours of 11 o'clock p.m., and six o'clock a.m., but all trains operating between such hours may be run and operated at a reasonable rate of speed."
The defendant denied negligence and set up the plea of contributory negligence.
The issues submitted to the jury and their answers thereto, were as follows:
"1. Was the plaintiff injured by the negligence of defendant, as alleged in the complaint? Answer: Yes.
2. In what amount was the plaintiff damaged? Answer: $2,500."
The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. *Page 676 
The defendant, at the close of plaintiff's evidence and at the close of all the evidence, made motions in the court below for judgment as in case of nonsuit. C. S., 567. The motions were overruled and in this we can see no error.
It is the well settled rule of practice and accepted position in this jurisdiction, that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support her cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and she is entitled to the benefits of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.
The evidence, taken in its most favorable light for plaintiff, was to the effect that A. C. Sanders was the owner of the automobile in which plaintiff was riding. He was driving the automobile and plaintiff had no control over the car or driver. She was an occupant, guest or gratuitous passenger (if she can be so designated) of her husband. Ordinarily, under such circumstances, negligence on the part of the driver of the car cannot be imputed to the occupant or guest. Bagwell v. R. R., 167 N.C. 611;White v. Realty Co., 182 N.C. 536; Williams v. R. R., 187 N.C. 348;Albritton v. Hill, 190 N.C. 429; Earwood v. R. R., 192 N.C. at p. 30;Dickey v. R. R., 196 N.C. 726; Campbell v. R. R., ante, 107.
Of course if the negligence of the driver, A. C. Sanders, was the sole, only proximate cause of the injury, plaintiff could not recover. Campbellcase, supra.
In the present case we cannot say that the negligence of Sanders, if any, was the sole, only proximate cause of the injury. The injury occurred on a dark night, about 7.00 p.m., in an unlighted place, the driver of the automobile operating at 3 or 4 miles an hour. In approaching the crossing, Sanders, the driver, testified that there were a couple of little frame buildings on the left side of the train was approaching which would obscure the view of the driver, also "very poor lights on the east side (side train was coming). I don't think any lights on it." Witness (plaintiff's husband) further testified: "After passing the corner of the house if there had been any obstruction it was dark and I couldn't see. . . . I seen the train when it was right on me. I was right in front of it then. I didn't see it before. I had not heard it. I did not hear the whistle blow nor the bell ring. I said yesterday I *Page 677 
did not hear it. If I had heard I would have stopped. I didn't hear either the bell or the whistle." Madrin v. R. R., 200 N.C. 784.
The case of Herman v. R. R., 197 N.C. 718, cited by defendant, is not applicable. In that case "The evidence discloses that the automobile in which plaintiff was riding when it collided with the defendant's locomotive at a highway crossing in the village of Raynham, Robeson County, was running about 30 to 35 miles an hour; it skidded approximately 90 feet, presumably due to the driver's effort to stop, before striking the rear driving wheel just under the fireman's seat. `I saw the car hit and rear up like a bucking horse,' said one of the plaintiff's witnesses. The train was approaching, slowing down for the station stop, at a rate of from 10 to 12 or 15 miles an hour."
Nor is Eller v. R. R., 200 N.C. 527 applicable. The collision in that case occurred about 8:26 o'clock in the morning. At p. 530 it is said: "The evidence of plaintiff further showed that when you `come in line with Park Avenue you can see up the railroad several hundred yards.' This distance was estimated at 300 to 400 yards, and there was no evidence to the contrary."
The evidence in the present case was to the effect that defendant ran its fast Florida train 25, 35 to 40 miles an hour through the town of Wilson (with a population of about 15,000 people), over a grade crossing, Green Street, on a dark night, gave no signal of its approach and had no gongs, safety gates, flagman, or watchman, at the crossing. At that time of the year it was in evidence that 350 to 400 automobiles crossed the railroad at Green Street each day. The traffic at the Green Street crossing was pretty heavy, especially at the time of the evening that the injury occurred. The evidence as to the heavy traffic was permissible as some evidence to be considered by the jury; in fact, defendant made no objection to this evidence.
In Moseley v. R. R., 197 N.C. at p. 637, the following charge in the court below was approved: "Before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or watchman at a crossing, it must first be shown that such crossing is more than ordinarily hazardous, as for instance, that it is in a thickly populated portion of a town a city, or that the view of the track is obstructed either by the company itself or by other objects proper in themselves. The frequency with which trains are passing, and the amount of travel, or noise, are also material circumstances in considering the question of danger." Cummings v. Penn. R.R. Co., 1156.
The ordinance of the town of Wilson prohibited a railroad or engineer from running its train through the town over 10 miles an hour, and it was incumbent on the engineer to ring the bell while so doing. *Page 678 
In Hendrix v. R. R., 198 N.C. at p. 144, is the following: "It is well settled in this jurisdiction that the violation of a town or city ordinance, or State statute, is negligence per se, but the violation must be the proximate cause of the injury. Ordinarily this is a question for the jury if there is any evidence, but, if there is no evidence that the violation of the ordinance or statute is the proximate cause of the injury, this is for the court to determine."
In Collett v. R. R., 198 N.C. at p. 762, we find: "An engineer in control of a moving train is charged with the duty of giving some signal of its approach to a public crossing; if he fails to perform this duty the railway company is deemed to be negligent; and if a proximate result of such negligence injury is inflicted the company is liable in damages.Russell v. R. R., 118 N.C. 1098; Perry v. R. R., 180 N.C. 290; Moseleyv. R. R. 197 N.C. 628,"
In Kimbrough v. Hines, 180 N.C. at p. 280, the Court quotes from cases as follows: "It is also established by the weight of authority that it is not always imperative on a traveler to come to a complete stop before entering on a railroad crossing; but `whether he must stop, in addition to looking and listening, depends upon the facts and circumstances of each particular case, and so is usually a question for the jury!' . . . Persons approaching a railroad crossing are not required, as a matter of law, to stop before attempting to cross, but his omission to do so is a fact for the consideration of the jury."
This Court approved the following language in the case of Finch v. R.R., 195 N.C. at p. 199: "The court, gentlemen, instructs you that it is a rule of law that a person who voluntarily goes on a railroad track at a point where there is an obstructed view of the track, and fails to look or listen for danger, cannot recover for an injury which may have been avoided by looking and listening; but where the view is obstructed or other facts exist which tend to complicate the question of contributory negligence, it becomes one for the jury." Moore v. R. R., ante, 26.
From the facts and circumstances of this case, the law applicable is stated in Earwood v. R. R., 192 N.C. at p. 30, as follows: "However, in the present case, there was evidence tending to show negligence on the part of the defendant in failing to give reasonable signals as required by law. There was also evidence that the driver of the car was guilty of negligence. Under this aspect of the case the doctrine of concurrent negligence applies, as stated by Stacy, J., in White v. Realty Co.,182 N.C. 536, as follows: `But if any degree, however small, of the casual negligence, or that without which the injury would not have occurred, be attributable to the defendant, then the plaintiff, in the absence of any contributory negligence on his part, would be entitled to *Page 679 
recover; because the defendant cannot be excused from liability unless the total causal negligence, or proximate cause, be attributable to another or others. When two efficient, proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes, he is liable.'Wood v. Public Service Corp., 174 N.C. 697; Hinnant v. Power Co.187 N.C. 288; Albritton v. Hill, 190 N.C. 429"; Smith v. R. R.,200 N.C. 177.
The court below instructed the jury as follows: "If the jury shall find from the evidence, and by its greater weight, that on 1 February, 1930, at about 7 o'clock at night the defendant's train was being operated in or through the town of Wilson, in violation of the ordinance, that is, at a greater rate of speed than ten miles per hour, or was being operated in or through the town without ringing the bell of the locomotive — either or both — then the court charges the jury that such act on the part of the defendant was negligence and if the jury shall further find from the evidence and by its greater weight that such violation of the ordinance was the proximate cause or one of the proximate causes of the injury to the plaintiff, it would be the duty of the jury to answer the first issue yes."
The pertinent part of the ordinance complained of by defendant, is as follows: "And every engineer in charge of any train or locomotive running through the town of Wilson shall ring the bell of such locomotive while the same is being run and operated through said town."
The defendant contends that the instruction set forth above was reversible error. We cannot so hold.
Defendant cites the case of S. v. R. R., 168 N.C. 103. That was a case construing the present ordinance of Wilson. That case decides that "It will hardly be contended that the town did not have the right to make the engineer solely responsible for the blocking of the crossing, if it saw fit to do so, and we think it is equally clear that the ordinance was intended to penalize the engineer alone for doing, or permitting to be done, the forbidden act. Defendant is not charged with running its train at an excessive rate of speed, and the portion of the ordinance where that is prohibited is the only one in which the words `railroad company' are used. When requiring the ringing of the bell and forbidding the blocking of the crossing, the engineer only is mentioned, it being reasonably supposed by the draftsman of the ordinance and the town board that if the prohibited acts were committed, the engineer would be the one directly responsible for it, and the only one who could well prevent it, and they very wisely and justly restricted the imposition of a penalty for disobedience of the ordinance to him. It may be seriously questioned if the part of the ordinance relating to the speed of *Page 680 
trains is not also confined to him; but we do not decide this, as it is not before us. The ordinance is too plainly worded for any doubt to be entertained as to the intention that the penal clause should be confined to the engineer." The ordinance is valid. In the penal enforcement of portions of the ordinance, the engineer who violated it must suffer. The ordinance placed a duty on the railroad company and the engineer, the employee of the railroad, under certain aspects of the ordinance was the person to perform the duty imposed on the master, and if he did not he must suffer the penalty.
We do not think the charge of the court below on the last clear chance, which defendant complains of, if the evidence is not sufficient to sustain the charge, is prejudicial on this record. See Redmon v. R. R.,195 N.C. 764. We see no prejudicial inconsistencies in the charge and cannot hold that it impinges on C. S., 564. The court below fully and fairly gave the contentions on both sides of the controversy, and the law applicable to the facts. We find
No error.